C. R. SHADDIX et al., Appellants,

v.

John KENDRICK et al., Appellees.

No. 5912.

Court of Civil Appeals of Texas.

El Paso.

Sept. 27, 1967.

Rehearing Denied Oct. 25, 1967.

W. B. Browder, Jr., and Gene L. Jameson, Midland, Stubbeman, McRae, Sealy & Laughlin, Midland, of counsel, for appellants-appellees, Shaddix and others.

Nelson, McCleskey & Harriger and Don Graf, Lubbock, for appellees-appellants, John Kendrick and others.

## OPINION

CLAYTON, Justice.

This is a suit attacking the formation and operation of an underground water conservation district. The suit was brought by C. R. Shaddix and three others, individually and as resident property owners and tax-payers of Gaines County, Texas, for themselves and as representatives of all property owners and tax-payers of the areas of seven Texas counties included in the South Plains Underground Water Conservation District No. 4, against John Kendrick, President, and five others, Directors of the District.

The history leading up to this litigation is, as briefly as possible, as follows: In the latter part of 1965 a petition signed by some fifty tax-paying landowners within the territory herein involved was presented to the Texas Water Rights Commission, pursuant to the provisions of Chapter 3A of Title 128, Vernon's Ann.Tex.Rev.Civ.St., asking for a hearing on the creation and organization of an underground water district under Texas Constitution, Article XVI, section 59, Vernon's Ann.St., and Article 7880–3c, T.R.C.S., to be known as South Plains Underground Water Conservation District No. 4. This petition described the territory to be included by metes and bounds, and stated that it was located wholly within Subdivision No. 4 of the Underground Water Reservoir, High Plains Area South of the Canadian River, as designated by order of the Texas Water Commission dated April 13, 1965. Pursuant to this petition, notice was issued and a hearing was held and order entered by the Commission on February 2, 1966 granting the petition and reciting that the boundaries of the proposed district are "co-terminus with the 'subdivision 4 of the Underground Reservoir, High Plains Areas, South of the Canadian River.'" The

order recited further that notice was given as required by law by publication in the Lubbock Avalanche-Journal, "a newspaper of general circulation in the area of the proposed district", and stating that "said district shall be composed of the area described in the order of the Commission, dated April 13, 1965 * * * and includes portions of the counties of Andrews, Cochran, Dawson, Gaines, Lynn, Terry and Yoakum * * *" and describing the said district by metes and bounds. The order also appointed Kendrick and four others as temporary directors of the district. This order was filed in the county clerk's office in each affected county in the district.

The temporary directors then met and issued notice of an election to be held on April 26, 1966, the voters to vote "for" or "against" confirmation of the district and "for" or "against" a maintenance ad valorum tax, and the election of a director in each precinct of the district. This notice was published in the Lubbock Avalanche-Journal, described by the Commission as a newspaper of general circulation in this area. Voting precincts were so arranged that the votes in each municipality in a county could be counted separately from the votes in the balance, or rural, areas of the county, and those in each county counted separately from each other county.

The election was then held, with results as to the votes on confirmation of the district and the imposition of a maintenance tax being as follows:

"Election—Vote

| | For District | Against District | For Tax | Against Tax |
|---|---|---|---|---|
| Terry | | | | |
| * Rural | 104 | 25 | 77 | 31 |
| * Brownfield | 185 | 73 | 164 | 81 |
| | 289 | 98 | 241 | 112 |
| Lynn | 3 | 3 | | |
| Dawson | | | | |
| Rural | 43 | 83 | 45 | 81 |
| Lamesa | 131 | 132 | 130 | 134 |
| | 174 | 215 | 175 | 215 |
| Andrews | 2 | 7 | 2 | 7 |
| Gaines | | | | |
| * Rural | 175 | 146 | 157 | 158 |
| Seminole | 130 | 438 | 135 | 408 |
| * Seagraves | 71 | 35 | 66 | 40 |
| | 376 | 619 | 358 | 606 |
| Yoakum | | | | |
| * Rural | 63 | 43 | 60 | 43 |
| * Plains | 72 | 24 | 64 | 32 |
| Denver City | 65 | 99 | 66 | 93 |
| | 200 | 166 | 190 | 168 |
| * Cochran | 6 | 2 | 5 | 3 |
| Total | 1050 | 1110 | 971 | 1111 |

"P-7"

"P-7"

Directors were elected in this election.

On May 2, 1966, the Directors met to consider the returns of this election on the proposition of whether or not the organization of the District should be confirmed. After canvassing the returns, the Directors resolved that "the election resulted in a majority vote for the confirmation of the" district "in the following segregated areas"—naming them. Also on that date, the Directors met to consider the returns of the election of April 26, 1966 on the proposal for a maintenance tax, but considered only "the votes in each box in the areas which voted in favor of the confirmation of said district", and so considered, passed a resolution that since such vote was favorable for the tax, the Directors were authorized to "do any and all things necessary in connection with the favorable action in this election."

On August 12, 1966 the Directors again met and passed a resolution reaffirming the resolution of May 2, 1966 confirming the district in certain areas, and set out the boundaries of these areas, which omitted the areas which opposed in the election the organization of the district. This resolution was filed in the Deed Records of Gaines County on August 16, 1966.

On September 15, 1966, plaintiff Shaddix and the other plaintiffs formally, by letter to defendant Kendrick; objected to the "attempted organization and creation" of the district, and enclosed a copy of the petition on that day filed in this suit.

On January 31, 1967 the trial court entered his judgment cancelling and annulling the resolution of August 12, 1966 filed of record on August 16, 1966 in the Deed Records of Gaines County, Texas, which declared the boundaries of the District, as well as annulling the results of the April 26, 1966 election as declared by the resolution. It also declared that the District itself was invalid, illegal and ineffective, and that all clouds cast on plaintiffs' titles to their lands

be cancelled and removed. It then adjudged costs of court against the District, but provided that the District be maintained and remain in existence until all debts incurred had been paid, that all expenses of organization and elections be paid pro rata by the County Commissioners' Court of each county included in the District by the order of the Texas Water Rights Commission of February 2, 1966 creating the District, and that if all debts were not paid in such manner, all lands and property included in such original District would be subject to taxes for the payment of all debts incurred by the District, to be assessed and collected as provided for in Article 7880, T.R.C.S. The court overruled defendants' amended motion for new trial.

To the part of the judgment pertaining to the costs of court and the continuance in existence of the District until all debts incurred were paid, and providing for collection of taxes to pay such obligations, the plaintiffs gave notice of appeal, and the defendants appealed from the other action of the court. At the request of the defendants the court made Findings of Fact and Conclusions of Law in support of its judgment.

We believe that the first issue between the parties is whether the results of the confirmation election authorized the confirmation of the underground water conservation district with boundaries different from those set out in the Order of the Texas Water Rights Commission. If this is true, which defendants contend, then under what circumstances and to what extent can such changes be made? The defendants base their position on Article 7880–115 which provides:

"No town, city or municipal corporation shall be included within any district organized hereunder unless the proposition for the organization thereof shall have been adopted by a majority vote of the voters therein participating in such election. Any such municipal corporation included within a district shall be a

separate voting district and the ballots cast therein shall be counted and canvassed to show the result of such election therein. No district hereafter organized embracing a town, city or municipal corporation shall include lands outside of such municipal corporation unless the election held therein to confirm and ratify the formation of such district shall be adopted thereby independent of the vote in such municipal corporation.

"No district, the major portion of which is in one county shall be organized to include lands in another county unless the election held therein to confirm and ratify the formation of such district shall be adopted by the vote of those voting such portion of such county, independent of the vote of the portion thereof in such other county or counties.

"In the event any portion of a district, under the provisions of this section shall vote against the formation of a district and the balance of such district shall vote for the formation thereof such proposition shall be adopted and such district be confirmed and ratified with the exception of the territory so voting against same, which is thereby automatically excluded therefrom and from all debts and obligations thereafter incurred, provided, however, if as many as ten per cent of the voters of such district so organized shall file with the board of directors a petition asking for a new election on such issue, such new election shall be ordered and held for the remaining portion of such district, or such district organization may be dissolved by order of the board of directors and a new district be formed. All lands and property included in such original district shall be subject to the payment of taxes for the payment of all debts and obligations incurred while it was a part thereof including organization expenses. The petition asking for a new election herein provided for shall be filed within thirty days after the date upon which the result of such

election is canvassed and declared by the directors and not thereafter. Acts 1925, 39th Leg., ch. 25, p. 119, § 115."

■ In obedience to this article, the Directors of the District excluded the municipalities of Lamesa, Seminole and Denver City, but included Brownfield, Seagraves and Plains, and excluded the counties of Lynn, Dawson and Andrews. In thus redefining the District pursuant to the above article, the Directors properly included Gaines County in the District, since the combined vote of Seagraves and the rural section of the county was favorable to confirmation, as well as for imposition of maintenance tax.

■ The defendants, in support of their position, cite us to the Texas Supreme Court case of Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927), which holds:

"Returns showed that a majority of all the votes cast in the entire district was against its creation and the issuance of preliminary or organization notes. There were three incorporated towns in the district, however, Ballinger, Bronte, and Miles. The returns from Ballinger showed a large majority against the organization of the district and issuance of the notes, while the returns from Bronte and Miles showed majorities in favor of each proposition. By eliminating Ballinger only from the district, a majority favored the creation of the district and the issuance of the notes. By eliminating all of said incorporated towns, the creation of the district and the issuance of the notes lost. Inasmuch, however, as by eliminating Ballinger a majority of the votes in the proposed district was in favor of the proposition submitted, the district was declared created and its directors qualified as such."

and:

"*The conclusion of the trial court that the vote of the incorporated town of*

*Ballinger* could not be excluded in counting the votes in the district was error. The statute expressly provides that such a municipality could or not be included in the district, and if the vote of the municipality is against its inclusion, then it is to be excluded; and the vote of Ballinger was rightly excluded in this instance. Vernon's Statutes 1918 Supplement, Art. 5107—1, 1922 Supplement, Art. 5107—118". (Emphasis added).

In discussing this authority, plaintiffs contend that it is based on the language of a specific statute, Article 5107–118, now Articles 7622 and 7775 (T.R.C.S.), but we find in the instant case statutory provisions of a similar character, which reinforces the conclusion that a district may be carved so as to include those areas in which a favorable vote is registered, omitting areas where the vote is opposed to the formation of the district. In further support of this conclusion, defendants have cited us to the language used in a 1927 amendment to Article 7880–4 (the italicized portion of Article 7880–4 being that added by the 1927 amendment), as follows:

"Such districts may include the area of any county or counties, or any portion thereof, including towns, villages, or municipal corporations. Such districts may include any county and number of counties, or any political subdivision of the State, and defined district or parts of any or all counties in the State of Texas; *and the land composing said districts need not be in one body, but may consist of separate bodies of land separated by land not embraced in the district; provided, however, that each segregated area must cast a majority vote in favor of the creation of the district before such segregated area can be included in the district.*

"*Provided that no district provided for in this Act shall embrace territory situated in more than one county except by a majority vote of the property tax paying*

voters residing within the territory in each county sought to be embraced within said District. * * *" (Emphasis supplied).

and further pointing out the wording included in the caption for this amendment:

"* * * and to amend Section 4, Chapter 25 of the Acts of the 39th Legislature of the State of Texas, by providing that the land composing water control and improvement districts may consist of separate bodies of land, separated by land not embraced in said district." (Acts 1927, 40th Legislature, 1st c.s., p. 496).

█ The above discussion is directed to defendants' Points of Error Nos. 1 and 2, that the trial court erred in declaring that the District was not legally confirmed in the election and that the Directors could not legally declare the boundaries of the District as they did. Although we have been favored by exhaustive and persuasive briefs on both sides of the controversy, we feel impelled to sustain these points of error and reverse the judgment of the trial court in cancelling and annulling the resolution of the Directors of August 16, 1966 declaring the boundaries of the District, and further declaring that the District itself was invalid, illegal and ineffective under the results of the election of April 26, 1966 as declared by the said resolution. We hereby render the judgment to affirm the validity of the District and its resolution setting out the boundaries thereof.

█ As to defendants' Points of Error Nos. 3 and 4, asserting error in failing to dismiss the suit for the reason that the trial court had no jurisdiction because of the asserted failure of the plaintiffs to file their suit within a proper period of time allowed by law and failure to comply with Article 9.03 and 9.30 of the Election Code, V.A.T. S., these points are overruled.

█ Point of Error No. 5 is sustained— that proper notice of the confirmation election was given.

The plaintiffs here presented eleven "Points". The first four points all recite that the trial court properly entered judgment declaring that the District was invalid, illegal and ineffective, but asserting error in:

(1) Ordering the District to be maintained and remain in existence until debts incurred shall be paid;

(This is provided for in Article 7880–115 and, in view of our decision, the District is in existence as reformed, which included Gaines County except for the municipality of Seminole).

(2) The court erred in ordering that all expenses of organization of the District shall be paid pro rata by the County Commissioners Court of each county included in the District; and

(3) Ordering that all expenses of elections shall be paid in the same manner;

(4) Ordering that if any debts and obligations of the District are not paid by the County Commissioners Court of each county included in the District, all lands and property included in the original District shall be subject to taxation for the payment of all such debts and obligations.

■ In addition to what has been heretofore said, we quote from the statutory requirements set out in Articles 7880–24 and 7880–115, T.R.C.S., on these points:

"Art. 7880–24

* * * If a majority of those voting at such election vote against the district, same shall have no further authority except that any debts incurred shall be paid and the organization shall be maintained until all such debts are paid."

"Art. 7880–115

* * * *All lands and property included in such original district shall be subject* *to the payment of taxes for the payment of all debts and obligations incurred while it was a part thereof including organization expenses.*" (Emphasis supplied.)

These first four points are overruled.

The plaintiffs' Point Five asserts that the court properly entered judgment annulling the resolution of the Directors filed in the Deed Records of Gaines County on August 16, 1966 declaring the boundaries of the District. We believe this point has heretofore been sufficiently discussed and overrule this point, as well as Point Six, which reads as follows:

"The trial court properly entered judgment declaring invalid, illegal and ineffective the South Plains Underground Water Conversation District No. 4 and cancelling, abrogating and annulling the instrument entitled 'Resolution Declaring Boundaries of the South Plains Underground Water Conservation District No. 4,' because (a) the district as designated in the resolution was not the same district for which any petition had been filed with the Texas Water Rights Commission, (b) the district with the areas designated in the resolution was not the same district for which any petition had been granted by any governmental agency, (c) there had been no legally sufficient notice of any election for confirmation of the district, (d) the resident, taxpaying property owners had voted against confirmation of the district, and (e) there had been an election held on the proposition of levying taxes for the district, but the vote was against levying of any such taxes."

■ Point Seven attacks that portion of the judgment that provides that organization expenses of the District and the election costs are to be paid pro rata by the County Commissioners Court of each county included in the District by order of the Texas Water Rights Commission of February 2, 1966 creating the District, since none of these counties nor any members of

the respective Commissioners Courts were parties to this suit, and thus such portion of the judgment was beyond the jurisdiction of the court. We consider this point to be well taken and that it should be sustained, and the judgment of the trial court in this respect reversed and here modified so as to eliminate this provision.

■ Point Eight is the same, but adds "that the lands in the original district shall be subjected to taxes to pay such debts and obligations, is void because there was no pleading or prayer by either party for such relief." The petition of plaintiffs was brought for themselves individually as taxpaying citizens and qualified voters of Gaines County, Texas "and as representatives of all property owners and tax-payers" of all the other counties "who own lands within the area" claimed by defendants to be included in the district. Their prayer is for annulling " * * * the orders and taxes of said district". This point is overruled.

Point Nine asserts that no evidence was adduced, or even offered regarding the existence or amount of any debts, obligations or election costs of the proposed district, "so that the judgment of the trial court is an illegal and improper carte-blanche authorization to the directors of the district to pay whatever amount they may decide to be appropriate to whomsoever they please for such services as they might desire." This point is overruled, but plaintiffs will still have their right to contest any improper debts attempted to be paid.

Points Ten and Eleven are as follows:

"Point Ten

"The Constitution of the State of Texas prohibits the creation or fixing of any indebtedness by any political subdivision of the State except when authorized by vote of the resident property owning taxpayers and, therefore, the relief authorized by the trial court illegally and unconstitutionally imposes debts, burdens, and taxes on the counties, the properties and the property owning taxpayers within the district.

"Point Eleven

"The trial court erred in entering judgment that taxes are to be assessed and collected for the payment of the debts and obligations incurred by South Plains Underground Water Conservation District No. 4."

Defendants assert:

"Art. 16, Sec. 59 of the Texas Constitution is the section under which the South Plains Water District is created. It provides that the Legislature shall authorize indebtedness for improvements and the maintenance thereof, but that such indebtedness shall not be authorized except upon the approval of the qualified property tax-paying voters. Expenses of organization and for a confirmation election cannot be characterized as indebtedness for improvements or maintenance. Since no voter approval is required except for improvement or maintenance indebtedness, the Legislative authority for the creation of organization and election expenses should be honored."

Points Ten and Eleven are overruled.

We believe we have covered all points raised by defendants and plaintiffs herein and, while our decision has not been easy, it is our considered opinion that the trial court's judgment must be reversed and rendered in part, reversed and modified in part, and affirmed in part in accordance with this opinion.