C. R. SHADDIX et al., Petitioners,

v.

John KENDRICK et al., Respondents.

No. B–611.

Supreme Court of Texas.

July 2, 1968.

Rehearing Denied July 24, 1968.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., and Gene L. Jameson, Midland, for petitioners.

Nelson, McCleskey & Harriger, George W. McCleskey and Don Graf, Lubbock, for respondents.

GREENHILL, Justice.

C. R. Shaddix and others brought this suit under Section F of Article 7880–3c to contest the confirmation and operation of the South Plains Underground Water Conservation District Number Four.[1] Trial was to the court without a jury. Its holding was that as a result of an adverse vote throughout the designated district, the district was not valid or legal. The judgment, however, provided that the debts of the district should be paid pro rata by the County Commissioners Court of each coun-

---

1. All reference to statutes herein are to Vernon's Texas Civil Statutes Annotated.

ty which had been designated by the Texas Water Rights Commission to be within the district (even though none of the counties or their commissioners were parties to the suit). The judgment further provided that if the debts were not paid, all lands and property within the district would be subject to the payment thereof.

The defendant directors of the district appealed from the portion of the judgment invalidating the district. The plaintiffs appealed from that portion of the judgment dealing with the payment of organizational expenses on the grounds, among others, that there had been no pleading, proof, or prayer for such relief. The Court of Civil Appeals reversed the trial court's judgment in part. It held that the district as redesignated by its board of directors after the election was valid; and it affirmed that part of the judgment that the organizational debts of the district be paid by the County Commissioners Courts. 419 S.W. 2d 908.

The steps leading to the formation and the details of the votes in the various counties and cities are set out in the opinion of the Court of Civil Appeals. They may be summarized as follows: the Texas Water Rights Commission declared the existence of a subdivision of an underground water reservoir in the Ogallala formation in all or parts of Andrews, Cochran, Dawson, Gaines, Lynn, Terry, and Yoakum Counties. The Commission entered an order, pursuant to Article 7880–3c, creating and organizing the district and fixing its boundaries which were coterminus with those of the subdivision of the ground water reservoir. The order also appointed the Respondent John Kendrick and four others as original directors of the district.

The provisions of the statute require that an election be held within the boundaries of the district in order to confirm the formation of the district, to elect directors, and to authorize maintenance taxes to support the district. Such an election was held. The results of the election are set out in detail in the opinion of the Court of Civil Appeals. 419 S.W.2d at 910. Throughout the entire district, the vote was against the confirmation of the district and also against the maintenance tax. The largest part of the "against" vote was from the towns of Seminole in Gaines County and Denver City in Yoakum County. The total vote of Gaines County was "against" both the district and its tax. The rural portion of Gaines and Yoakum Counties, however, voted in favor of the district and its taxes. The people in the largest portion of the rural land area overlying the ground water subdivision voted "for" the district and its maintenance tax.

The directors of the district who were elected at the confirmation election were uncertain as to what to do. They asked the Texas Water Rights Commission to request an Attorney General's opinion as to what area should be included in the subdivision. Such a request was made. After a period of time, the opinion request was withdrawn at the request of the district's directors, apparently because a deadline was approaching for the designation of the district to enable water users to have a basis for a depletion allowance under the regulations of the Internal Revenue Service.

The directors then, upon the advice of counsel, reformed the boundaries to eliminate the counties and cities which did not vote for the district and the maintenance tax. A very sizable rural area remained, and the directors declared the confirmation and existence of the district in that area. The portions eliminated were the parts of the district which were in Lynn, Dawson and Andrews Counties and the towns of Seminole and Denver City, all which had voted against the district and its maintenance tax. Gaines County was retained in the district, although as a whole, its people had voted "against." The elimination of the town of Seminole and its vote left rural Gaines County "for."

Article 7880 has 147 sections and dozens of subsections. It is a remarkably clumsy and cumbersome set of statutes. They cover, among other things, surface water districts dealing with the storage and delivery of surface water, drainage of surface water, and also ground water districts. Many of the problems are wholly unrelated. Yet the laws are mixed into one article of the statutes, Article 7880. Section 3c particularly relates to ground water districts; but in Section B, it adopts the "administrative and procedural provisions" of Article 7880 "in so far as applicable to such Districts * * *."

Many of the sections of Article 7880 touch on the problem at hand; but the ultimate result of the confirmation [validity] of the district under the election and the redesignation of the boundaries centers in the interpretation of two sections: Sections 24 and 115.

Section 24, dealing with the confirmation election under consideration, says in part:

"If the majority of those voting at such election vote in favor of the confirmation of the district the same is thereby finally confirmed and ratified. If a majority of those voting at such election vote against the district, same shall have no further authority except that any debts incurred shall be paid and the organization shall be maintained until all such debts are paid."

Section 115 says in part:

"In the event any portion of a district, under the provisions of this section shall vote against the formation of a district and the balance of such district shall vote for the formation thereof such proposition shall be adopted and such district be confirmed and ratified with the exception of the territory so voting against same, which is thereby automatically excluded therefrom and from all debts and obligations thereafter incurred, * * *"

These two sections were enacted at the same session of the legislature and are to be read together. It is our opinion that at least as to ground water districts set up to preserve and regulate a ground water reservoir or a subdivision thereof, Section 115 is to be read with the limitation imposed by Section 24. That is, if a majority of the people in the entire district vote against the confirmation of the district, then as to that election, "same shall have no further authority. * * *"

Counsel for the district ably contends that the opinion of this Court in Trimmier v. Carlton, 116 Tex. 572, 296 S.W. 1070 (1927) controls this case, and that under its holding, Section 115 quoted above should be controlling. We disagree for several reasons. There was another statute then in force, now Article 7775, which had provisions similar to Section 115 of Article 7880. Article 7775 deals with a type of surface water district known as a Water Improvement District and is not one of the statutes or sections adopted in the ground water section, Section 3c. Among the powers given by Article 7775 are the distribution of surface waters to areas to be benefitted. The inclusion or exclusion of lands to be benefitted, or to be excluded as not being capable of being benefitted, or not desiring water service, is quite flexible and understandably so. In the Trimmier case as here, the election in the originally designated surface water district as a whole was against the formation of the district. This Court, however, upheld the elimination of the town of Ballinger (which voted against the district, apparently not desiring the district's water service or its tax) and upheld the district in the remaining area as redesignated.

There is more than one reason why the Trimmier decision is not applicable here; but the main one is that when the facts of Trimmier arose in 1923, the Legislature had not enacted Sections 24 and 115 of Article 7880. This Court did not have before it, in deciding Trimmier, the limiting Section 24 which says that if the election as a

whole fails, the district "shall have no further authority. * * *" We therefore are of the opinion that the trial court, under Section 24 of Article 7880, correctly held that the district was not confirmed, and that its directors did not have the power to designate new boundaries and give life to portions of the area in which the people had voted to confirm the district.

We disagree, however, with the portion of the trial court's judgment which directed that the organizational debts of the district be paid by the County Commissioner's Courts of the seven counties. Section 24 of Article 7880 does say that if the confirmation election fails, the district's organization shall continue until its debts are paid. But it does not say how or by whom the debts shall be paid; and the Petitioners here question the constitutionality of the levy of a tax without a vote of the people.

█ We sustain the point of the Petitioners that the question was not raised or tried in the trial court, and we decline to render an advisory opinion on the matter. There were no pleadings or prayer for or against the organizational expenses. We have read the entire statement of facts and are of the opinion that it cannot fairly be said that the matter was tried by consent. There was no evidence as to what or how much all of the expenses were; no evidence that anybody attempted to levy any tax; and the counties and their commissioners were not even parties to the suit.

There are pleadings as to taxes, but they fairly relate to the election as to the maintenance tax which failed to carry. There is evidence that approximately $2600 was spent in publishing notices of various sorts in some newspapers in some counties, but the purpose of this evidence seems to have been to justify the economy of not publishing notices in newspapers in other counties. There is evidence that an engineer was employed to gather data for the presentation at the Texas Water Rights Commission. He was paid (by someone) $400 a month and car expenses. And after the election and redefining of the boundaries, a manager was employed at a sum not disclosed by the record. The district purchased depth gauges and tapes to measure wells. But when a member of the board of directors was asked on the trial if the district had borrowed any money, there was objection that there was no authority to take such action; and the question was withdrawn. Our opinion is that the matter of organizational expenses was not litigated in this case, and the trial court erred in directing the various County Commissioners to levy and collect taxes to pay off the undetermined amounts of expenses. Whether the district's organization may validly be maintained under Section 24 of Article 7880 to collect money, how much, in what manner and from whom in order to pay its debts, and whether the debts are to be paid pro rata by the Commissioners Court may be the subject of other litigation or other solution.

The judgment of the Court of Civil Appeals is reversed. That portion of the trial court's judgment directing the payment of the debts of the district by the County Commissioners Courts and directing that the lands and property within the district shall be subject to the payment of the debts of the district is reversed and set aside. That portion of the trial court's judgment is affirmed which held that the directors had no power to redesignate the boundaries of the district and operate as a district in the newly designated area because, as a result of the election throughout the district, such district was not confirmed.