Opinion issued May 19, 2011

 



In The

Court of Appeals

For The

First District of Texas

———————————

NO. 01-10-00043-CV

———————————

Houston Independent School district, City of Houston,
Harris County, Harris County Education Department, Port of Houston of Harris
County authority,
Harris CountY Flood Control District,
Harris County Hospital District, and
houston Community College System, Appellants

V.

Ned B. Morris III, DANIEL W. SHIPPER, PATRICK A. SHIPPER,
ANITA GIBSON, MARY ANN MOSELY, DEBORAH L. MOORE,
LINDA SHIPPER BENDER, CAROLINE D. ARMSTRONG,
PAMELA K. MOORE, JOYCE SALTER, AND JAMES R. HUNT, Appellees



 



 

On Appeal from the 151st District Court

Harris County, Texas



Trial
Court Case No. 2004-71420

 



 

 

O P I N I O N

Appellees,
Ned B. Morris III, Daniel W. Shipper, Patrick A. Shipper, Anita Gibson, Mary
Ann Mosely, Deborah L. Moore, Linda Shipper Bender, Caroline D. Armstrong,
Pamela K. Moore, Joyce Salter, and James R. Hunt (collectively, “the
Taxpayers”),
have filed a motion for rehearing and a motion for en banc reconsideration of
our opinion issued on March 4, 2011.  Appellants, Houston Independent School
District, City of Houston, Harris County, Harris County Education Department,
Port of Houston of Harris County Authority, Harris County Flood Control District,
Harris County Hospital District, and Houston Community College System
(collectively, “the Taxing Units”), have filed a response.  We deny the motion for rehearing, withdraw
our opinion and judgment of March 4, 2011, and issue this opinion and judgment
in their place.  Because we issue a new
opinion, the Taxpayers’ motion for en banc reconsideration of our prior opinion
is moot.  See Richardson‑Eagle,
Inc. v. William M. Mercer, Inc., 213 S.W.3d 469, 472 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied).

The Taxing Units bring this
interlocutory appeal of the trial court’s order denying their plea to the
jurisdiction.[1]  The trial court determined it had
jurisdiction over the Taxpayers’ claims for refund of taxes.  In their sole issue on appeal, the Taxing
Units assert that the trial court erred because the Taxpayers did not exhaust
their administrative remedies prior to filing their claims in district
court.  We conclude the Taxpayers were
required to exhaust their administrative remedies and, therefore, the trial
court lacked jurisdiction.  We reverse
and render an order of dismissal.

Background

          The
Harris County Appraisal District’s appraisal roll listed the Taxpayers as the
owners of certain tracts of land, including 9.38 acres actually owned by the Taxpayers
and .96 acres not owned by the Taxpayers. 
The Taxpayers did not timely challenge this determination
administratively.  In December 2004, the
Taxing Units filed suit against the Taxpayers to collect taxes unpaid on all
10.34 acres for the years 1983 through 2003. 
The Taxing Units placed a lien on the properties to secure the payment
of taxes, penalties, interest, and costs. 
The Taxpayers answered with a general denial and affirmative defenses,
including that the petition failed to comply with the requirements in the Tax
Code, that the Taxing Units never properly notified the Taxpayers of the
delinquent taxes, that the assessment of taxes is erroneous based on the
description of the property, and that designated parties to the lawsuit have no
ownership interest in the properties.  

While the suit was pending,
the Taxpayers, under protest, paid the taxes to stop further penalties and
interest from accruing, to avoid foreclosure of the 9.38 acres that they did
own, and to avoid breaching a contract to sell the 9.38 acres.  The Taxpayers explained that they paid under
protest the entire amount because the Taxing Units would not accept payment of
the taxes apportioned between the 9.38 acres that the Taxpayers did own and the
.96 acres that the Taxpayers did not own. 
Shortly after paying the taxes, the Taxpayers filed a counterclaim for a
refund of the taxes, penalties, and interest they had paid on the .96 acres.[2]  After receiving payment, the Taxing Units
nonsuited their claims for delinquent taxes. 
At the Taxpayers’ motion, the district court realigned the parties,
designating them as the plaintiffs.   

In their eighth amended
petition, the Taxpayers contended they have never owned any interest in the .96
acres for which they paid taxes under duress and they sought a refund of that
amount through a declaratory judgment. 
The Taxing Units answered by asserting affirmative defenses of
governmental immunity, failure to exhaust administrative remedies, voluntary
payment, and other allegations.  The
Taxing Units filed a plea to the jurisdiction asserting the district court
lacked jurisdiction because the Taxpayers failed to exhaust their
administrative remedies as required by the Tax Code.  The court denied the plea.  

Standard of Review

          When,
as here, the facts are undisputed and the plea to the jurisdiction presents
purely a legal question, we review de novo a trial
court’s ruling on a plea to the jurisdiction. 
Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217,
226 (Tex. 2004); see Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998).  A trial
court’s judgment is binding only if it has jurisdiction over the parties or
property, jurisdiction of the subject matter of the suit, jurisdiction to enter
the particular judgment, and the capacity to act as a court.  State ex rel. Latty v. Owens, 907 S.W.2d 484, 485 (Tex. 1995).  Subject matter jurisdiction involves the
kinds of controversies a court has the authority to resolve.  Davis v. Zoning Bd. of Adjustment of City of La Porte, 865 S.W.2d
941, 942 (Tex. 1993).[3]  Subject matter jurisdiction cannot be
waived.  Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 443–44 (Tex. 1993).

          Statutory construction is also a legal
question that we review de novo.  HCBeck, Ltd. v. Rice,
284 S.W.3d 349, 352 (Tex. 2009). 
In construing a statute, we must “ascertain and give effect to the
Legislature’s intent.”  Id.  To ascertain that intent, we begin with the
“plain and common meaning of the statute’s words.”  Id. (quoting Tex. Dep’t of Transp.
v. City of Sunset Valley,
146 S.W.3d 637, 642 (Tex. 2004)).  We
also consider the objective the Legislature sought to achieve through the
statute as well as the consequences of a particular construction.  Id.;
see also Tex. Gov’t Code Ann. § 311.023(1), (5) (West 2005).  We “must not interpret [a] statute in a
manner that renders any part of [it] meaningless or superfluous.”  Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238,
256 (Tex. 2008).  We thus construe
the text according to its plain and common meaning unless a contrary intention
is apparent from the context or unless such a construction leads to absurd
results.  Presidio Indep. Sch. Dist. v. Scott, 309 S.W.3d 927, 930 (Tex. 2010).  

Texas Tax Code

          The Texas Constitution expressly
allows the Legislature to bestow exclusive original jurisdiction on
administrative bodies.  Cameron Appraisal Dist. v. Rourk, 194
S.W.3d 501, 502 (Tex. 2006) (citing Tex.
Const. art.
V, § 8). 
Pursuant to this power, the Texas Tax Code limits the general
jurisdiction of the district courts and provides “detailed
administrative procedures for those who would contest their property
taxes.”  Id. (citing Tex. Tax Code Ann. §§ 41.01–.71 (West
2008 & Supp. 2010)). 
The Texas Supreme Court has held that “a taxpayer’s failure to pursue an
appraisal review board proceeding deprives the courts of jurisdiction to decide
most matters relating to ad valorem taxes.” 
Id. (quoting
Matagorda Cnty. Appraisal Dist. v.
Coastal Liquids Partners, L.P., 165 S.W.3d 329,
331 (Tex. 2005)).  “The
administrative procedures are ‘exclusive’ and most defenses are barred if not
raised therein.”  Id. (citing Tex. Tax Code Ann. § 42.09 (West
2008)).

Section
42.09 of the Tax Code states:

REMEDIES EXCLUSIVE.

 

(a)   Except as provided in Subsection (b) of this section, procedures
prescribed by this title for adjudication of the grounds of protest authorized
by this title are exclusive, and a property owner may not raise any of those
grounds:

 

(1)   in defense to a suit
to enforce collection of delinquent taxes; or

 

(2)   as a basis of a claim
for relief in a suit by the property owner to arrest or prevent the tax
collection process or to obtain a refund of taxes paid.

 

(b)   A
person against whom a suit to collect a delinquent property tax is filed may
plead as an affirmative defense:

 

(1)   if
the suit is to enforce personal liability for the tax, that the defendant did
not own the property on which the tax was imposed on January 1 of the year for
which the tax was imposed;  or

 

(2)   if the suit is to foreclose a lien securing the payment of a
tax on real property, that the property was not located within the boundaries
of the taxing unit seeking to foreclose the lien on January 1 of the year for
which the tax was imposed.

 

(c)   For
purposes of this section, “suit” includes a counterclaim, cross-claim, or other
claim filed in the course of a lawsuit. 

 

Tex. Tax Code Ann. § 42.09.   

To complain
about ownership or any other matter adversely affecting the property or the
taxpayer, the property owner is required to timely file a written protest with
the appraisal review board within the applicable period of limitations.  Id. § 41.44(a) (West 2008).  Generally, a property owner must file a written notice of
protest within 30 days after delivery of notice.  Id.  After exhaustion of the administrative right
to protest, a property owner may file a petition for de novo review with the
district court.  Id. §§ 42.21(a) (West Supp. 2010),
42.23(a) (West 2008).  Administrative
decisions are final if not appealed to the district court within 60 days.  Id. § 42.21(a); Cameron
Appraisal Dist., 194 S.W.3d at 502. 

Taxpayers Are “Property Owners” Entitled to Administrative Challenge 

          The parties dispute whether section
42.09(a) applies to the Taxpayers because it uses the term “property
owners.”  See Tex. Tax
Code Ann. § 42.09(a).  The Taxpayers point out that the
administrative tax protest procedure is only available to a “property owner,”
and they contend that the exhaustion requirement is inapplicable to one whom, in
fact, does not own the property in question. 
See id. §§ 41.41(a),
42.09(a)(1)–(2) (West 2008).  

Section 41.41(a)(7) states,
“A property owner is entitled to protest before the appraisal review board the
. . . determination that the property owner is the owner of property
. . . .”  Id. § 41.41(a)(7).  The literal meaning of “property owner” is
the actual property owner.  Applying this
literal meaning, section 41.41(a)(7) would provide,
“A[n] [actual] property owner is entitled to protest before the appraisal
review board the . . . determination that the [actual] property owner
is the owner of property.”  Thus, read
literally, section 41.41(a)(7) authorizes a protest of a determination of
ownership only if that determination is correct and the party challenging the
tax is the party who is legally obligated to pay it.  The legislature could not have intended to
create a right of administrative protest that can only be invoked in situations
where the determination being protested is correct.  Cf.
Black’s Law Dictionary, 1344 (9th
ed. 2009) (defining “protest” in tax context as “A taxpayer’s statement to the
collecting officer that payment is being made unwillingly because the taxpayer
believes the tax to be invalid.”) (emphasis added).  The
plain meaning of “protest” in the tax context indicates that the Legislature
intended to create a right to challenge incorrect determinations.  See id.

          The
Taxpayers contend that the section 41.41(a)(7)’s “most reasonable meaning is
that one who actually owns the property can object if a tax notice is sent
elsewhere.”  The Taxpayers thus interpret
the term “property owner” as having two different meanings within section
41.41(a)(7). 
Under their interpretation, section 41.41(a)(7)
would provide, “A[n] [actual] property owner is entitled to protest before the
appraisal review board the . . . determination that the [person
listed as the] property owner [in the tax appraisal rolls] is the owner of
property . . . .”  In the
scenario the Taxpayers describe, the actual property owner would not be the
assessed the tax; instead, the person erroneously determined to be the property
owner would.  However, by definition, a
tax protest is made by the party against whom the tax is assessed—i.e., the
taxpayer.  See id.  By
restricting the term “property owner” to only the actual property owner, the
Taxpayers’ interpretation of section 41.41(a)(7)
contradicts the definition of tax protest, as that term is used in section
41.41(a).  See id.

          In
contrast to the Taxpayers’ interpretation, we interpret the term “property
owner” with respect to section 41.41(a)(7) as having a
consistent meaning—a person listed as the property owner in the tax appraisal
rolls.  Under our interpretation, section
41.41(a)(7) provides:  “A [person listed as the] property owner [in
the tax appraisal rolls] is entitled to protest before the appraisal review
board the . . . determination that the [person listed as the]
property owner [in the tax appraisal rolls] is the owner of property
. . . .”  Our
interpretation is consistent with the definition of a tax protest because it provides
that the person against whom the tax is assessed—not the untaxed actual
property owner—has the administrative right to challenge the tax erroneously
assessed against him.

          Our
interpretation is confirmed by the case law from the Texas Supreme Court and
this Court as well as the broader statutory scheme.  As explained above, section 42.09(a) provides
that if an administrative remedy is available to a person, he must exhaust that
administrative remedy before he may take that claim to the courts; failure to
exhaust results in forfeiture of the right to assert the claim.  See Tex. Tax Code Ann. § 42.09(a).  In Robstown
Independent School District v. Anderson, the Texas Supreme Court held that
a person who was listed in the tax rolls as the “property owner” “waived the
defense [of nonownership] . . . by failing to comply with the
administrative procedure of protest.”  706 S.W.2d 952, 953 (Tex. 1986).  The interpretation of section 41.41(a)(7) implicit in the Texas Supreme Court’s holding is the
same interpretation that we apply in the present case.  Likewise, in First Bank of
Deer Park v. Harris County, this Court held that a banking corporation that
was assessed property taxes on shares of its own stock could have
administratively protested its nonownership of that stock by filing protest
with appraisal review board.  804 S.W.2d 588, 591 (Tex. App.—Houston [1st Dist.] 1991, no writ).

          Following
Robstown, in 1987, the Legislature
added section 42.09(b) to provide an exception to the exhaustion
requirement:  “A person against whom a
suit to collect a delinquent property tax is filed may plead as an affirmative defense . . . if the suit is to enforce personal
liability for the tax, that the defendant did not own the property on which the
tax was imposed . . . .”  Act
of April 23, 1987, 70th Leg., R.S., ch. 53, § 1, sec. 42.09(b), 1987 Tex.
Gen. Laws 130. (codified at Tex. Tax Code Ann. § 42.09(b)). 
The Taxpayer’s proposed interpretation of 41.41(a)(7)
would render meaningless the exception to the exhaustion requirement.  If only “actual property owners” can
challenge determinations of ownership, then, as the Taxpayers assert, exhaustion
would never apply to a nonowner, and a nonowner would be in no need of an
exception to the exhaustion requirement. 
However, the Legislature’s exception to exhaustion, allowing persons to
plead nonownership as an affirmative defense, specifically contemplates that
exhaustion will apply to a nonowner.  Otherwise,
the exception would only guarantee the right to plead nonownership as an
affirmative defense to an actual property owner.  We must reject the Taxpayers’ interpretation
of section 41.41(a)(7) because it would render the
exception in section 42.02(b) meaningless. 
See Hogue, 271 S.W.3d at
256. 

          Applying our interpretation, the
Taxpayers were entitled to protest the appraisal review board’s determination
that they were the owners of the property. 
Because the Taxpayers failed to timely exercise their administrative
challenge under section 42.09(a), the district court did not obtain
jurisdiction over their case by an appeal under that portion of the statute.  See Tex. Tax Code Ann. §§ 41.41, 42.21, 42.09; Cameron Appraisal Dist., 194 S.W.3d at 502.  

The Taxpayers cite to several cases purportedly
showing that they lacked standing to pursue an administrative tax protest and,
therefore, could not have exhausted administrative remedies.  The Taxpayers refer to KM-Timbercreek, LLC v. Harris Cnty. Appraisal Dist., 312 S.W.3d 722 (Tex. App.—Houston [1st Dist.] 2009,
no pet.), Koll Bren Fund VI v. Harris Cnty. Appraisal
Dist., No. 01-07-00321-CV, 2008 WL 525799 (Tex.
App.—Houston [1st Dist.] Feb. 28, 2008,
pet. denied) (mem. op.), and Simmons & Co. Holdings, Inc. v. Houston
Indep. Sch. Dist., No.
01-97-00691-CV, 1999 WL442141 (Tex. App.—Houston [1st Dist.] June 29, 1999, no pet.) (not
designated for publication).[4]  KM-Timbercreek
and Koll Bren are distinguishable
from this case because neither addresses the non-ownership ground of protest
involved in this case.  See KM-Timbercreek, 312 S.W.3d at 726; Koll Bren, 2008 WL 525799, at *1.  Instead, these cases address the situation
where one entity sells property to a second entity and subsequently the first
entity administratively protests the taxes instead of the second entity.  See
KM-Timbercreek, 312 S.W.3d at 725; Koll
Bren, 2008 WL 525799, at *1.  This
Court held the first entity lacked standing to protest the taxes because it had
sold the property to the second entity, which was the only entity with
standing.  See KM-Timbercreek, 312 S.W.3d at 727; Koll Bren, 2008 WL 525799, at *4. 
In contrast, here, the Taxpayers, being listed as the owner in the tax
appraisal rolls, had standing to administratively protest their claim of
non-ownership as to the assessment of all the properties against them.

          In Simmons,
the taxing entities sued Simmons for delinquent taxes.  Simmons, 1999 WL 442141, at *1.  Simmons had assumed a lease providing that it
would pay all property taxes.  Id. 
Simmons subleased part of the property, requiring the sublessee to pay
its portion of the property taxes.  Id. 
The sublessee failed to pay, and the taxing entities sued Simmons for
the amount.  Id.  Simmons defended itself
at trial by claiming it was entitled to an exemption, but the district court
determined Simmons was responsible for the taxes because it had not exhausted
all available administrative remedies.  Id. 
Examining a dictionary’s definition for “owner,” this Court determined
that a lessee could not be a “‘property owner’ for purposes of the relevant
provisions of the Tax Code . . . .”  Id. at *2.  The
primary question in Simmons was
whether a nonowner can administratively protest the applicability of a tax
exemption under section 41.41(a)(4), not, as in the present case, whether a
nonowner could protest the determination that he was the owner of the property
under section 41.41(a)(7).  As explained
above, the term “property owner” as it applies to section 41.41(a)(7) means the person listed as the property owner in the
tax appraisal rolls.

We conclude that because the Taxpayers failed to
timely exercise their administrative challenge under section 42.09(a), the
district court never acquired jurisdiction over their claim for a refund unless
the exception in section 42.09(b) applies. 
See Tex. Tax Code Ann. §§ 41.41, 42.21, 42.09; Cameron
Appraisal Dist., 194 S.W.3d at 502.  

          Affirmative Defense
of Non-Ownership

The parties dispute whether the exception in section
42.09(b) is applicable.  See Tex.
Tax Code Ann.
§ 42.09(b).  In
a suit by a taxing authority “to enforce personal liability for the tax,” a
person who has not exhausted his administrative remedies may nevertheless
respond by asserting an “affirmative defense” that he “did not own the property
on which the tax was imposed.”  Id. 
This exception applies only when the person against whom a suit to
collect a delinquent property tax is filed is asserting an “affirmative
defense.”  Id.  Although the Taxpayers
initially asserted an affirmative defense of non-ownership, the present lawsuit
is no longer one in which the Taxpayers are asserting an affirmative
defense.  Rather, because the Taxing
Units have nonsuited their claims against the Taxpayers, the Taxpayers’ present
lawsuit is a claim for affirmative relief with them as plaintiffs.  The Taxpayers do not assert an affirmative
defense as required by the Tax Code.  See id.      

          The Taxpayers accurately observe that
despite their failure to exhaust administrative remedies, when the Taxing Units
filed the lawsuit against them, they properly raised non-ownership as an
affirmative defense.  See id. § 42.09(b)(1);
Cameron Appraisal Dist., 194 S.W.3d at 502 & n.2 (stating that
although other defenses are barred by failure to exhaust administrative
remedies, taxpayers “who do not file administrative protests may still assert
that . . . they did not own the property”).  Had the Taxing Units not nonsuited their
claims against the Taxpayers, the trial court would have jurisdiction with the
Taxpayers in the posture of defendants asserting an affirmative defense.  See Tex. Tax Code Ann. § 42.09(b)(1); Cameron Appraisal Dist., 194 S.W.3d at
502.  But when the Taxing Units dropped
the lawsuit, there was no longer any case for the Taxpayers to defend
against.  We disagree with the Taxpayers that their “affirmative defense”
against the Taxing Units can continue after the Taxing Units nonsuited their
claims because the exception allows only an “affirmative defense” to a lawsuit
filed by the Taxing Units.  See Tex.
Tax Code Ann.
§ 42.09(b).

          An affirmative defense is different
from a claim for affirmative relief.  See Hamm v. Millennium Income Fund,
L.L.C., 178 S.W.3d 256, 268 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied).  “An affirmative defense ‘seeks to
establish an independent reason that the plaintiff should not recover’ and is
‘thus [a defense] of avoidance, rather than a defense in denial’; that is, it
is a defense of confession and avoidance.”  Id. (quoting In re C.M., 996 S.W.2d 269, 270 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). 
In contrast, “[a] claim for affirmative relief is one ‘on which the claimant
could recover compensation or relief even if the plaintiff abandons his cause
of action.’”  Tex. Mut. Ins. Co. v.
Ledbetter, 251 S.W.3d 31, 38 (Tex. 2008) (quoting Univ. of Tex. Med.
Branch at Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98,
101 (Tex. 2006) (punctuation omitted)). 
When the Taxing Units nonsuited their claims for delinquent taxes, the
Taxpayers’ affirmative defense became moot, and the section 42.09(b) exception
was no longer applicable according to the express terms of the Tax Code.  See
Tex. Tax Code Ann. § 42.09(b).  

          We recognize that the basis for an
affirmative defense that is proper under the Tax Code can, in some circumstances,
also be the basis a claim for affirmative relief.  See First Bank of Deer Park, 804
S.W.2d at 593 (stating that in tax refund case, defensive theory may be pleaded
as either affirmative defense or as separate cause of action if party is
seeking affirmative relief).  Although it
is possible for certain theories to form the basis of both claims for
affirmative relief and affirmative defenses, section 42.09(b) is only
applicable to an “affirmative defense.”  See
Tex. Tax Code Ann. § 42.09(b).  Therefore, the bar in section 42.09(a) that
prohibits proceedings in court when administrative remedies have not been
exhausted applies.  See id.
§ 42.09(a)(2).

          The Taxpayers suggest that the rules
of civil procedure allow them to proceed with their claim even after the Taxing
Units nonsuited their claims.  Texas Rule
of Civil Procedure 162 provides in pertinent part, “Any dismissal pursuant to
this rule shall not prejudice the right of an adverse party to be heard on a
pending claim for affirmative relief . . . .” 
Tex. R. Civ. P. 162; In re
Greater Houston Orthopedic Specialists, 295 S.W.3d 323, 324 (Tex. 2009).  Although generally a lawsuit may proceed
after dismissal of a claim by an adverse party, the lawsuit must independently
comport with a court’s jurisdiction.  See Color Tile, Inc. v. Ramsey, 905 S.W.2d 620, 623 (Tex. App.—Houston
[14th Dist.] 1995, no writ). 
Here, the Taxpayers’ affirmative claim for a refund does not comport
with the requirements of the Tax Code, which is required for the district court’s
jurisdiction in this case.  See
Tex. Tax Code Ann. § 42.09(a)(2).

          The
Taxpayers rely upon City of Pharr v. Boarder to Boarder Trucking Serv., Inc.
to assert that the trial court was “authorized to dispose of the issues
involved in [the non-ownership] defense.”  76 S.W.3d 803, 806 (Tex.
App.—Corpus Christi 2002, pet. denied). 
In City of Pharr, the court stated, “Furthermore, because the
appellee is able to use non-ownership as a defense, we hold that [the] trial
court is authorized to dispose of the issues involved in that defense.”  Id. 
City of Pharr is consistent with our decision today in that it concerns
issues related to a defense asserted by non-owners.  See Tex. Tax Code Ann. § 42.09(b).  Here,
the concern is not that there are issues related to a defense of non-ownership
but, rather, that there is no defense being asserted because the Taxpayers are
plaintiffs with a claim for affirmative relief. 
We hold that the district court lacks jurisdiction because no party is
asserting an affirmative defense of non-ownership as required for jurisdiction
under section 42.09(b).  See
id.

Exclusivity of
Tax Code

Generally, the administrative tax protest procedure is
a property owner’s exclusive opportunity for raising a ground challenging the
validity of a tax.  See id. § 42.09(a).  However, when “[t]he basis of [a plaintiff’s]
complaint in the trial court . . . is not a ground of protest
contained in the property tax code[,] . . . section 42.09’s
exclusivity provision is not applicable and does not preclude the trial court
from exercising subject matter jurisdiction over [plaintiff’s] lawsuit.”  Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd.,
180 S.W.3d 267, 269–70 (Tex. App.—Dallas 2005, no pet.)
(holding claim that failure of tax office—as opposed to chief appraiser,
appraisal district, and appraisal review board—to provide required notice is
not ground of protest authorized by Tax Code); see Tex. Tax Code Ann.
§ 42.09(a)(2); Cameron Appraisal Dist., 194 S.W.3d at 502 (holding claim seeking
declaration that tax is unconstitutional “need not be brought administratively”
through tax protest procedure before asserting that claim in district court but
claim seeking to set aside individual tax assessment, even though premised on
claim of unconstitutionality, must be brought administratively through tax
protest procedure).

As explained above, the ground for protest at issue
here is provided for in section 41.41, which states that a property owner is
entitled to protest before the appraisal review board the determination that
the property owner is the owner of the property.  See Tex. Tax Code Ann. § 41.41(a).[5]  The Tax Code, therefore, exclusively controls
the disposition of this case.  See
id. § 42.09; Cameron
Appraisal Dist., 194 S.W.3d at 502.  Having determined that the Taxpayers’
affirmative claims for refund on the grounds of non-ownership is controlled by
the Tax Code and that those claims fail to meet the requirements of the code,
we hold the district court lacks jurisdiction over the Taxpayers’ claims.

Implied Duress

The Taxpayers assert that the district
court had jurisdiction over their lawsuit because they paid the taxes under
implied duress.  Statutory penalties and
accrued interest for late payment can constitute implied duress.  Highland Church of Christ v. Powell, 640 S.W.2d 235, 236–37 (Tex.
1982).  Under the common law, a
person could sue for a refund of taxes if he was compelled under duress imposed
by a public entity to pay a tax that is illegal, illegally imposed, or
illegally collected.  Dallas Cnty. Cmty. Coll. Dist. v. Bolton, 185 S.W.3d 868, 876 (Tex. 2005); Nivens v. City of League City, 245 S.W.3d 470, 474 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied).  However, there can
be no claim of implied duress if a person has a procedure by which he can pay
the disputed amount, avoid the penalties and interest, and assert a claim for
repayment.  See First Bank of Deer
Park, 804 S.W.2d at 594–95.  The Tax Code provides this type of procedure
to a property owner in the form of the administrative tax protest.  See
Tex. Tax Code Ann. §§ 41.41(a),
42.08 (West 2010) (to appeal decision after administrative tax protest, taxpayer
must pay lesser of amount of taxes due on (1) portion of taxable value of
property that is not in dispute or (2) property under the order from which the
appeal is taken); First Bank of Deer Park,
804 S.W.2d at 595.  Accordingly, a
property owner has no claim of implied duress where he has had the opportunity
to assert a tax protest regardless of whether a protest was actually asserted.  See
First Bank of Deer Park, 804 S.W.2d at 594–95.

           The Taxpayers contend that First Bank of Deer Park stands for the
proposition that duress would make exhaustion of administrative remedies
unnecessary.  See id. at 595.  First Bank of Deer Park sued Harris County
for a refund of taxes it paid for bank stock but it did not first
administratively protest the tax assessment.  Id. at 592.  This Court determined that the Bank’s failure
to administratively protest the ownership of the stock precluded it from
seeking judicial relief.  Id. 
This Court noted that the bank’s suit was for the refund of taxes it
paid to Harris County and that its assertion of implied duress was as an
affirmative defense to the voluntary-payment rule relied on by Harris County to
defend against the Bank’s case.  Id. at 593–94.  Under the “voluntary-payment rule,” a party
making a voluntary payment of taxes may not file a suit for a refund.  Id. at 593.  This
Court held that the bank had failed to present any evidence of duress or any
other affirmative defense to voluntary-payment rule.  Id. at 594–95.  This
Court explained that although the bank presented evidence that a tax lien would
jeopardize the bank’s standing with governmental authorities that regulate it,
it could have avoided the penalties by administratively protesting the
tax.  Id. at 595.  First
Bank of Deer Park is instructive in that it explains that duress can be an
affirmative defense used by a taxpayer to defend against the voluntary-payment
rule when that rule is asserted by a taxing entity, but it also clarifies that
duress does not occur when the harm coming to a taxpayer could have been
avoided by an administrative protest to a tax assessment.  Id. at 594–95.  We,
therefore, disagree with the Taxpayers’ characterization of First Bank of Deer Park as not requiring
exhaustion of their administrative remedies.

          The Taxpayers cite also Nivens
v. City of League City and Fort Bend
Independent School District v. Schindler, No. A14-90-00385-CV,
1991 WL 94414 (Tex. App.—Houston [14th Dist.] June 6, 1991, writ denied)
(not designated for publication), to support their entitlement to a refund of
taxes paid under duress.  In Nivens, this Court determined that
governmental immunity does not apply when a taxpayer seeks a refund of
illegally collected taxes and alleges that the payments were made as a result
of duress.  Nivens, 245 S.W.3d at 474.  Nivens sued the city to recover taxes they
had paid in excess of the amount the city was legally permitted to collect
under the water code, and the city responded that the action was barred by the
principle of governmental immunity.  Id. at 473.  Unlike Nivens,
where governmental immunity was the basis of the plea to the jurisdiction,
here, the plea to the jurisdiction is premised on failure to exhaust
administrative remedies.  Cf. id. at
474.  Nivens,
therefore, is inapplicable.         

          Schindler is also
inapplicable.  Schindler sued for the
refund of taxes, and on appeal, Ford Bend Independent School District relied on
the voluntary-payment rule to defend against the suit.  See
Schindler, 1991 WL 94414, at *1.  This Court noted that an exception to the
voluntary-payment rule exists when the payment is made under duress.  Id. at *2.  Schindler
does not mention jurisdiction at all, nor does it mention exhaustion of
remedies.  Id. at *1–3.

Two other cases cited by the Taxpayers for their claim
of duress also do not support their assertion that they have a right,
regardless of exhaustion of administrative procedures, to sue for a refund of
taxes paid under duress.  Both Bolton, 185
S.W.3d at 877, and Austin National Bank
of Austin v. Sheppard, 71 S.W.2d 242, 246 (Tex. 1934), discuss duress as a
defense to the taxing authority’s assertion of the voluntary-payment rule.  But the voluntary-payment rule has been
rendered largely unavailable due to the provisions in the Texas Tax Code, as
explained by the Supreme Court of Texas:

The voluntary-payment rule has also been
applied, albeit infrequently, to prohibit recovery of illegal taxes paid to the
sovereign.  This Court has stated:  “A person who voluntarily pays an illegal tax
has no claim for its repayment” unless that person paid under duress.  . . . Although the
voluntary-payment rule has been applied, at times, in both the private and
public contexts, other legal and statutory remedies have evolved over time to
supplant the rule’s application in many of these contexts.  Like other equitable claims and defenses, an
adequate legal remedy may render equitable claims of unjust enrichment and
equitable defenses of voluntary-payment unavailable. . . .  For example, the Texas Tax Code now provides
that a person may recover a voluntary payment of certain illegal taxes, as long
as the person paid under protest. 

 

BMG Direct Mktg., Inc. v.
Peake, 178
S.W.3d 763, 769–71 (Tex. 2005).  Similarly, the
Texas Supreme Court explains:

In many areas, the common-law requirements
for voluntary payments and duress have been supplanted by statute.  In the years after [Nat’l Biscuit Co. (Nabisco) v. State, 135 S.W.2d 687 (Tex. 1940),]
and Austin Nat’l Bank, the
Legislature systematically adopted refund mechanisms and protest requirements
in various statutes that obviated the need to show business compulsion in many
cases. . . .  For example, the
Legislature adopted mechanisms for the refund of a “tax or fee imposed by
[Title 2 of the Tax Code] or collected by the comptroller under any law,
including a local tax collected by the
comptroller.” . . . . 
The Legislature also enacted a mechanism to protest the payment of ad
valorem taxes in order to recover an overpayment. . . .  These statutes apply to most of the taxes and
fees expressly authorized by statute. 
They apply to state and local sales taxes, property taxes, corporate
franchise taxes, professional occupation taxes, and much more.

 

Bolton, 185
S.W.3d at 880.

We hold that because the Taxpayers could
have administratively challenged the disputed amount, they cannot claim duress
based on the consequences resulting from their failure to make that challenge,
nor may they pursue as plaintiffs an affirmative claim for refund of taxes paid
under duress.  See First Bank of Deer Park, 804 S.W.2d at 593. 

Due Process

Collection of a tax constitutes a deprivation of
property; therefore, a taxing unit must afford a property owner due process of
law.  McKesson Corp. v. Div. of Alcoholic
Beverages & Tobacco, Dept. of Bus. Regulation of Florida,
496 U.S. 18, 36–37, 110 S. Ct. 2238, 2250–51 (1990).  Due process, at a minimum, requires notice
and a fair opportunity to be heard prior to a deprivation of a protected
property interest.  Mathews v. Eldridge, 424 U.S. 319, 333,
348, 96 S. Ct. 893, 902, 909 (1976). 
The due process clause grants the aggrieved party the opportunity to
present his case and have its merits fairly judged.  Bank of Am. Nat’l Trust & Sav. Assoc. v. Dallas Cent. Appraisal
Dist., 765 S.W.2d 451, 454 (Tex. App.—Dallas
1988, writ denied). 
Some form of hearing is required before an owner can be finally deprived
of a protected property interest.  Appraisal Review Bd. of El Paso Cnty. Cent. Appraisal Dist. v. Fisher, 88 S.W.3d 807, 813
(Tex. App.—El Paso 2002, pet. denied) (holding that “[s]ince it is undisputed
that Mr. Fisher neither received notice nor had an opportunity to contest the
appraisal, he was denied due process, and any taxes and penalties assessed from
the appraisal is void.”); Bank of Am.,
765 S.W.2d at 454 (remanding case to Dallas County Appraisal Review Board for
hearing on bank’s protest based on finding that Bank had been deprived of due
process based on application of Tax Code). 
As we have noted above, the Taxpayers had a right to and could have
challenged their non-ownership of the property under the administrative
provisions of the Tax Code.  See
Tex. Tax Code Ann. § 41.41(a)(7).

The Taxpayers, however, suggest that they did not
receive adequate notice about the assessment. 
They assert that “there is nothing in the record that the taxpayers were
furnished with appraisal notices” prior to being sued by the Taxing Units.  The Taxpayers claim the record fails to show
they “were ever billed for the taxes on the properties not in dispute.”  They suggest that this record defect “raises
issues under the federal and state constitutions,” although they do not explain
which issues are raised.  

In the Taxpayers’ original answer (when they were still the
defendants), they asserted as an affirmative defense: “Notice of Delinquent
Taxes:  Defendant further alleges that neither the Harris County Appraisal
District nor any taxing unit ever timely and properly notified the property
owners of delinquent taxes as required under §33.04(d) of the Texas Property
Tax Code.”  After the realignment of the
parties, Taxpayers acting as plaintiffs responded to the Tax Authorizes second
amended plea to the jurisdiction.  The Taxpayers never complained about a
lack of notice.  Moreover, an attached affidavit from one of the
Taxpayers, James R. Hunt, explains that they met with an official from the
Harris County Appraisal District (HCAD) to discuss their non-ownership. 
The Taxing Units suit to collect taxes was filed about one year later in
December 2004.  The taxes were paid in October 2005.

          In
general, a tax protest must be filed within 30 days of delivery of notice.  See id. § 41.44(a).  In 1985,
the Legislature added failure to give notice as a ground for a tax protest in
the Tax Code.  See id. § 41.411(c)
(West 2008).[6]  Although the record does not show when notice
of taxes due was first delivered to the Taxpayers, it is clear that by late
2003 the Taxpayers were discussing the matter with HCAD and had actual notice
about the assessment.  The Taxpayers’
failure to bring an administrative tax protest to challenge failure to give
notice bars their ability to assert this ground in district court.[7]  See id. §§
41.411(c), 41.44(c), 42.09(a).  We
disagree with the implication by the Taxpayers that they have been deprived of
due process due to lack of notice because the record shows they received actual
notice at least one year before trial and they failed to administratively
protest the failure to give notice through the administrative procedures in the
Tax Code.  See City of Houston v. Parkinson, 419
S.W.2d 900, 904 (Tex. Civ. App.—Houston 1967, writ ref’d n.r.e.) (due process is satisfied if complaining party had actual
notice).

Conclusion

We hold the trial court erred by denying the Taxing
Units’ plea to the jurisdiction.  See Tex. Tax Code Ann. § 42.09(a)(2); Cameron Appraisal
Dist., 194 S.W.3d at 502; see also First Bank of Deer Park, 804
S.W.2d at 592 (stating that taxpayer did not preserve right to challenge
ownership of stock because protest of ownership under Tax Code section 41.41
was not timely filed).  We sustain the Taxing Units’ sole issue.  Top oWe reverse the order of the trial court and
render judgment granting the plea to the jurisdiction.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of
Justices Jennings, Alcala, and Massengale.











[1]           See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)
(West 2008) (authorizing interlocutory appeal of order denying governmental
entity’s plea to the jurisdiction).





[2]           The Taxpayers protested to the Harris County
Appraisal District (HCAD) the determination that they were the owners of the
.96 acre, and HCAD denied the protest. 
The Taxpayers claim they timely filed suit against HCAD.  Granting a plea to the jurisdiction, the
district court dismissed the case against HCAD, and that order has not been
appealed.  The Taxpayers also included
claims for equitable subrogation against the parties who they believed were the
true owners of the land who should have paid the taxes.  This appeal does not concern the claims for
equitable subrogation.





[3]           We
note that the plea to the jurisdiction claimed by the Taxing Units here is
based on the exhaustion of administrative procedures in the Tax Code and not
based on sovereign immunity as a bar to the suit.  Although the Taxpayers cite many cases
discussing sovereign immunity, those decisions are inapplicable based on this
plea premised on exhaustion of administrative procedures.  See,
e.g., Saturn Capital Corp. v. City of
Houston, 246 S.W.3d 242, 245 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied) (sovereign immunity does not prevent one who paid illegal taxes under
duress from filing suit seeking repayment). 
Furthermore, the issue here is not the Taxing Unit’s decision on the
merits.  The Taxpayer’s
citation to Bashara v. Saratoga Indep. Sch. Dist., 163 S.W.2d 631, 633 (Tex.
1942), is inapplicable because Bashara
concerns the merits of the underlying dispute.





[4]           The
taxpayers also cite three cases not from this Court:  Skylane
West Ltd. v. Harris Cnty. Appraisal Dist., No. 14-08-00507-CV, 2009 WL 4913256 (Tex.
App.—Houston [14th Dist.] 2009, no pet.) (mem.
op.), Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd.,
180 S.W.3d 267, 270 (Tex. App.—Dallas 2005, no pet.), and Hood v. Hays Cnty.,
836 S.W.2d 327, 329 (Tex. App.—Austin 1992, no pet.).  However, these cases are distinguishable
because they do not address the non-ownership ground of protest.  See
Skylane, 2009 WL 4913256, at *1
(protest of valuation of property); 1420
Viceroy, 180 S.W.3d at 270 (holding that because ground of protest relied
upon by taxpayer, lack of notice from a taxing unit, was not contained in
chapter 41 of Tax Code, section 42.09 did not bar suit based on non-exhaustion
of remedies); Hood, 836 S.W.2d at 329
(protest of valuation of property).





[5]           In
Robstown Independent School District v.
Anderson, the Texas Supreme Court held that a property owner who,
“[p]ursuant to section 41.41 . . . is
entitled to protest . . . a determination that he is the owner of
property” but “fails to comply with the administrative procedure of protest
. . . is precluded from raising non-ownership in defense to a suit to
enforce collection of delinquent taxes.” 
706 S.W.2d 952, 953 (1986) (citing Tex.
Tax Code Ann. § 42.09
(West 1982)).  The
Legislature amended section 42.09 to specifically overturn the Robstown holding.  Gen. Elec. Capital Corp. v. City of Corpus Christi, 850 S.W.2d 596, 602 (Tex. App.—Corpus Christi 1993, writ
denied).  In doing so, the
Legislature provided that a person, regardless of exhaustion of the
administrative protest procedure, may assert a claim of non-ownership as an
affirmative defense against a suit to enforce personal liability for a tax.  Tex. Tax
Code Ann. § 42.09(b)(1) (West 2008).





[6]           Starting
on Dec. 31, 2007, if the ground of the tax protest is failure to give notice,
the tax protest must be filed prior to the date taxes would become delinquent,
which in that situation would be 125 days after written notice of taxes due is
first delivered.  See Tex. Tax Code Ann. § 41.411(c) (West
2008).





[7]           No
notice was timely filed by the Taxpayers within 30, or even 125, days of their
first notice.