**FIRST BANK OF DEER PARK, Appellant,**

v.

**HARRIS COUNTY and the Assessor and Collector of Taxes for Harris County, Appellees.**

No. 01–88–00501–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 24, 1991.

---

Jeffrey Gelb, E.D. Vickery, Ruben F. Valdes, Houston, for appellant.

Marsha L. Floyd and Larry Hayes, Asst. County Attys., David W. Showalter and Pamela Prince Stines, Bellaire, for appellees.

Before EVANS, C.J., and O'CONNOR and DUGGAN, JJ.

## OPINION ON MOTION FOR REHEARING

O'CONNOR, Justice.

This is an appeal from a summary judgment in favor of Harris County and the Assessor and Collector of Taxes for Harris County. We grant the county's motion for second rehearing, withdraw our opinion issued on rehearing dated March 8, 1990, issue this, and affirm.

First Bank of Deer Park sued Harris County and the Assessor and Collector of Taxes for Harris County (collectively "Harris County") for a refund of taxes it paid from 1979 through 1982, in the total amount of $47,236.80. During those years, Harris County assessed a tax on bank stock under the authority of the property tax provisions of the Texas Tax Code (the Tax Code):

> This state has jurisdiction to tax stock in a banking corporation that is incorporated in this state or, if the bank is a national bank, is located in this state.

TEX. TAX CODE ANN. § 11.02(d) (Vernon 1982).[1] As of January 1, 1985, bank stock is no longer subject to taxation.[2]

On December 8, 1983, the Bank protested the tax assessments in a letter to the county tax assessor. In that letter, the Bank stated its reason for protest as:

> Without waiving any other right or remedy, First Bank of Deer Park pursuant to TEX. TAX CODE ANN. § 31.11 (Vernon 1982), hereby applies for a refund of *all* monies paid for taxes levied by Harris County on the stock of the Bank in 1980, 1981 and 1982 tax years.
>
> As you are well aware, the United States Supreme Court has held the taxation of the Bank's stock illegal and void because federal obligations were considered in computing the tax. *See American Bank and Trust Company v. Dallas County,*

---

1. Formerly TEX.REV.CIV.STAT.ANN. art. 7166, *repealed and recodified by*, ch. 841, §§ 1 & 6, 1979 Tex.Gen.Laws 2217, 2234 & 2329.

2. Section 11.02(d) was repealed by ch. 31, art. 3, part A, § 1, 2nd Called Sess., 1984 Tex.Gen.Laws

193, 212. A franchise tax replaced the bank stock tax. *See* TEX. TAX CODE ANN. ch. 171 (Vernon 1982 & Supp.1991), *as amended by*, ch. 31, art. 3, part B, § 4, 2nd Called Sess., 1984 Tex.Gen.Laws 193, 213.

463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983).

(Emphasis in original.)

## I. The Bank's protest of ownership

In the first point of error in its original brief, the Bank contended the trial court erred in granting the summary judgment because the statute imposed the tax on shareholders, not the bank. In the fourth point of error, the Bank challenged the protest procedures.[3] We will consider the two points together.

The Bank claims the tax should have been assessed against the shareholders and, if due, they should have paid it.

### A. The propriety of the notice

The Bank admits that it did not follow the protest provisions set out in chapters 41 and 42 of the Tax Code. The only protest the Bank filed was under TEX. TAX CODE ANN. § 31.11 (Vernon 1982). The issue before us is whether the Bank can protest the assessment of the tax and request a refund under section 31.11.

#### 1. Protests under section 41.41

A property owner may protest the determination of ownership of the taxed property. TEX. TAX CODE ANN. § 41.41(7) (Vernon Supp.1991). A property owner who contests ownership must file a written notice of the protest with the appraisal review board before June 1 or not later than the 30th day after the date the notice of taxes is delivered to the property owner. TEX. TAX CODE ANN. § 41.44(a)(1) (Vernon Supp.1991).

The Tax Code guarantees the protesting taxpayer a hearing and a right to appeal a ruling of the appraisal review board. *See* TEX. TAX CODE ANN. § 41.45 (Vernon

1982), § 42.01 (Vernon 1982). The Tax Code further states that its remedies are exclusive. TEX. TAX CODE ANN. § 42.09 (Vernon Supp.1991). The Tax Code prohibits a party from filing suit for a tax refund, unless the party first protests the tax under the provisions of the Tax Code. TEX. TAX CODE ANN. § 42.09(a)(2) (Vernon Supp.1991).

#### 2. Protests under section 31.11

A refund for overpayments or erroneous or excessive payment of taxes is authorized if: (1) the taxpayer applies to the tax collector for a refund of an overpayment or erroneous payment of taxes; and (2) the auditor for the taxing unit determines that the payment was erroneous or excessive. TEX. TAX CODE ANN. § 31.11(a) (Vernon 1982). If the refund exceeds $500, the governing body of the taxing unit must also determine that the payment was erroneous or excessive and must approve the refund. *Id.* Unless the taxpayer applies for a refund within three years from the date of payment, the taxpayer waives the right to the refund. TEX. TAX CODE ANN. § 31.11(b) (Vernon 1982).

The Bank had a right to protest the ownership of the stock by filing a notice under section 41.41 with *the appraisal review board.* When the Bank filed a protest under section 31.11 with *the tax assessor-collector,* it did not preserve its right to contest the ownership of the stock. As a matter of law, the Bank's notice, filed with the tax assessor-collector, did not preserve its right to challenge the ownership of the stock.[4]

### B. The sufficiency of the notice

The only reason the Bank gave for its protest in its letter of December 8, 1983,

---

3. In its first and third points of error in its motion for rehearing, the Bank challenges our findings under these two points of error.

4. The dissent disagrees with the majority on this point. The dissent argues that the Bank could have protested the assessment of the tax and requested a refund under sections 31.11 and 41.41 of the Tax Code by the same instrument. In support of its argument, the dissent notes that section 42.09 permits a party to raise own-

ership as an affirmative defense when sued for delinquent taxes.

The majority sees two problems with this reasoning. First, this suit was not a suit for delinquent taxes. This suit was filed by the Bank to recover taxes it had paid. Second, a notice to the tax assessor-collector under section 31.11 could not serve as a notice to the appraisal review board under section 41.41.

was that the tax was unconstitutional. Under its first point of error, however, the Bank argues that it did not own the stock.

The Tax Code states:

A notice of protest is sufficient if it identifies the protesting property owner and the property that is the subject of the protest and indicates apparent dissatisfaction with some determination of the appraisal office.

TEX. TAX CODE ANN. § 41.44(d) (Vernon Supp.1991).

▪▪▪ The Bank's denial of ownership is entirely unrelated to the constitutionality of the tax. The Bank did not exhaust its administrative remedies, which, under the Tax Code, precludes it from seeking judicial relief. *Dallas County Appraisal Dist. v. Lal,* 701 S.W.2d 44, 46 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). As a matter of law, the notice the Bank filed with the tax assessor-collector, contesting the tax because federal obligations were considered in computing the tax, did not preserve its right to challenge the ownership of the stock.

### C. The timeliness of the notice

The Bank filed its protest to the constitutionality of the tax, which it now contends preserved its objection to ownership, almost a year after the final payment for the 1982 taxes. In its amended petition, the Bank stated it paid taxes on the following dates:

| | | |
|---|---|---|
| 1979 | 12/12/79 | $ 6,928.38 |
| 1980 | 12/31/80 | 11,598.58 |
| 1981 | 12/31/81 | 13,003.22 |
| 1982 | 12/17/82 | 15,706.62 |

The Bank gave notice of protest on December 8, 1983, almost a year after it paid the 1982 taxes.

▪▪▪ The Bank's contention, that it was improperly taxed for property of the shareholders, should have been raised in a protest of ownership timely filed under section 41.41 of the Tax Code. Under section 41.-44, the Bank was required to file a notice protesting ownership no later than the 30th day after the date the notice of taxes was delivered to it. The Bank's notice was filed too late. As a matter of law, the untimely notice the Bank filed with the tax assessor-collector did not preserve its right to challenge the ownership of the stock.

We overrule the Bank's first and fourth points of error in its original brief.[5]

## II. The unconstitutionality of the statute

In the second point of error in its original brief, the Bank charged that the trial court erred by not finding the Texas bank stock tax, TEX. TAX CODE ANN. art. 11.02 (Vernon 1982) unconstitutional. This is the only issue the Bank raised in its letter protesting the tax assessments to the tax assessor-collector.[6]

In its original brief, the Bank argued the tax was void because it violated a federal statute, and that it was void when applied to the Bank because the Bank owned United States government obligations. The Bank claimed the County's refusal to refund the taxes unjustly enriched Harris County. In response, the County argued that it was not necessary to reach the issue because of the voluntary payment rule.

We did not reach the issue of the constitutionality in our original opinion. Instead, we relied on the voluntary payment rule. The Bank did not challenge our refusal to reach the constitutional issue by point of error in its motion for rehearing.

## III. The affirmative defenses

In the third point of error in its original brief, the Bank argued that the tax payments were not voluntary because they were the result of fraud, duress, or mutual mistake of fact. In our original opinion, we overruled the Bank's third point of error. In its second point of error in the motion for rehearing, the Bank challenged our holding that the payment was voluntary. We withdrew our original opinion, sustained the Bank's point of error, and remanded the case for trial. In its motion for second rehearing, the County asks us to

---

5. We also overrule the Bank's first and third points of error in its motion for rehearing.

6. In its motion for rehearing, the Bank did not challenge the constitutionality of the statute.

again review the issue of voluntary payment. We will do so.

The County complains that we treat the Bank's allegations of fraud, duress, and mutual mistake as part of its cause of action. The County is correct. Because we considered them part of the Bank's cause of action, we held the County was required to disprove them as a matter of law. The County argues that instead of being part of the Bank's cause of action, they are affirmative defenses to the voluntary payment rule. If the allegations of fraud, duress, and mutual mistake are affirmative defenses, it was the Bank's burden to raise a fact issue on them, not the County's burden to disprove them as a matter of law.

The dissent maintains that the Bank's allegations of fraud, duress, and mutual mistake were part of the Bank's cause of action. The dissent contends the allegations were not pled merely as affirmative defenses.

▮ Fraud, as well as other allegations, can be pled as an affirmative defense or pled as a cause of action. *Adams v. Tri–Continental Leasing Corp.*, 713 S.W.2d 152, 153 (Tex.App.—Dallas 1986, no writ). To determine if a claim of fraud is an affirmative defense or a separate cause of action, we look to the pleadings to see if the party requested affirmative relief for fraud. If the fraud allegation does not request damages, the fraud claim is an affirmative defense; if the fraud allegations request damages, fraud is a counterclaim. *Id.*

▮ The Bank's suit was for the refund of taxes it paid to Harris County. In its prayer, the Bank asked only for a refund of all sums paid. The Bank did not ask for any damages for fraud, duress, or mutual mistake. Thus, the Bank plead fraud, duress, and mutual mistake as affirmative defenses to voluntary payment, not as the dissent maintains, as claims for affirmative relief. If the party opposing a summary judgment relies on an affirmative defense, he must raise a fact issue on each element of the defense to avoid a summary judgment. *Brownlee v. Brownlee*, 665

S.W.2d 111, 112 (Tex.1984); *Nicholson v. Memorial Hosp. Sys.*, 722 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The Bank's allegations of an affirmative defense in its pleadings did not raise fact issues about its defenses. The County was not required to disprove the Bank's affirmative defenses as a matter of law, unless the Bank raised a fact issue on them.

## IV. The voluntariness of the payment

The Fourteenth Court of Appeals recently stated that the voluntary payment rule:

> which has long been the law in Texas, stands for the proposition that taxes voluntarily paid may not be recovered by the taxpayer, even though the tax is illegal. The only exceptions to the rule against the recovery of voluntary payments of an illegal tax are (1) fraud; (2) express or implied duress; and (3) mutual mistake of fact.

*Salvaggio v. Houston Indep. School Dist.*, 709 S.W.2d 306, 308 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd) (citations omitted).

In order to rely on an affirmative defense, the Bank, as nonmovant to the summary judgment, was required to plead the defense and raise a fact issue about it. In *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979), the supreme court stated:

> The non-movant must expressly present to the trial court any reason seeking to *avoid* movant's entitlement, such as those set out in Rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue.

(Emphasis added.)

Rule 94 requires the parties to specifically plead matters that are affirmative defenses to matters pled in a pleading filed by an opponent. Rule 94 lists duress and fraud as defenses that must be pled. By case law, mutual mistake has been identified as an affirmative defense that must also be pled. *Durham v. Uvalde Rock Asphalt Co.*, 599 S.W.2d 866, 869 (Tex.App. —San Antonio 1980, no writ).

To use an affirmative defense to avoid a summary judgment, the Bank was required to produce sufficient summary judgment evidence to raise a fact issue on each element of one of its defenses. *Brownlee*, 665 S.W.2d at 112; *Kirby Exploration Co. v. Mitchell Energy Co.*, 701 S.W.2d 922, 926 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

We must review the record to see if the Bank's pleadings **and** its summary judgment evidence raised fact issues to support the affirmative defenses of fraud, express or implied duress, or mutual mistake of fact.

In its second amended petition, the Bank challenged the taxes as illegal, unconstitutional, and the result of fraud, duress, and mutual mistake of fact. In its response to the summary judgment, the Bank raised the issues of voluntariness, unconstitutionality, fraud, duress, and mutual mistake.[7]

The only summary judgment evidence on these issues was in an affidavit of an executive vice-president of the Bank attached to the Bank's response to the motion for summary judgment. The vice-president said the Bank relied on the tax bills as express or implied representations that the tax the County demanded were valid, legal taxes, that the County was entitled to them, and that they were assessed in accordance with all applicable federal and state laws. The vice-president also said that tax statements were false, and the Bank was mistaken as to the accuracy of the valuation formulas used by the County. The Bank could not permit a tax lien to be placed on the property because it would jeopardize the Bank's standing.

> The Bank could not allow a tax lien to be placed against the Bank premises because it would seriously jeopardize the Bank's standing with the governmental authorities which regulate the Bank. Damaging ramifications include the loss of the Bank's right to conduct business, impaired or destroyed ability to obtain insurance and bonds, not to mention the damage to the Bank's reputation....

The Bank attached a typical tax bill to the affidavit. Nothing on the tax bill shows any express or implied representation.

**■ 1. Fraud.** Although the Bank raised the affirmative defense of fraud in its pleadings and in its response to the summary judgment, the affidavit did not produce evidence on each element of fraud. The Bank, therefore, did not raise a fact issue about its affirmative defense of fraud.

**■ 2. Mutual mistake of fact.** Although the Bank raised the affirmative defense of mutual mistake in both its pleadings and in its response to the summary judgment, and the affidavit states that the Bank paid the tax bills by mistake, the Bank did not raise a fact issue that the County made a mistake when it issued the invoice for the tax. At best, the Bank raised the issue of unilateral mistake. The Bank, therefore, did not raise a fact issue about its affirmative defense of mutual mistake of fact.

**3. Express or implied duress.** The Bank raised the affirmative defense of duress in its pleadings and in its response to the summary judgment, and in the affidavit the vice-president stated that the Bank felt compelled to pay the tax bills for business reasons.

**■ First,** the County correctly points out that the Bank produced no evidence to raise a fact issue of express duress. If the Bank has any duress defense, it must be implied duress. The Bank's argument seems to be that if a party pays a tax required by law, and years later the law is declared unconstitutional, the payment was, as a matter of law, implied duress.

The cases the Bank cites, which permitted a tax refund, all involved statutes that have onerous summary penalties and bur-

---

**7.** In its motion for a second rehearing, the County argues that the Bank raised the issue of voluntary payment for the first time in its motion for rehearing. Thus, the County claims, the Bank waived the issue. We disagree. The County raised the issue of voluntary payment in response to the Bank's claim that the statute was unconstitutional. The Bank pled the exceptions to the voluntary payment rule, fraud, duress, and mutual mistake of fact.

dens *in the statute.* For example, in *State v. Akin Products Co.,* 279 S.W.2d 409 (Tex. App.—San Antonio 1955), *aff'd,* 155 Tex. 348, 350, 286 S.W.2d 110, 111 (1956), the Texas Supreme Court stated:

> The controlling issue in this case is whether plaintiffs paid the tax by reason of an Act which was so burdensome and onerous as to justify the trial court's belief that the plaintiffs paid the taxes under duress.

That case dealt with a statute that the court declared unconstitutional in its entirety. The penalties in the Act were so severe that the taxpayer could have been enjoined from doing business. The Act:

> (1) Imposed a penalty at the rate of $50 each day for the violation;
>
> (2) declared that the taxes were the personal obligation of the taxpayer, and imposed interest at the rate of 10% on all unpaid taxes;
>
> (3) declared the failure to post the bond or pay the tax as illegal; and
>
> (4) expressly directed the courts, on request of the Commission, to restrain or abate any violations and to grant injunctive relief which could be mandatory.

*Id.* The court specifically noted that one taxpayer was actually enjoined from doing business. *Id.* The court found the taxes were paid under duress. *Akin,* 286 S.W.2d at 112.

In *State v. Connecticut General Life Ins. Co.,* 382 S.W.2d 745, 748 (Tex.1964), the Texas Supreme Court again found the taxpayer demonstrated duress. In that case, the taxpayer was forced to pay the taxes to avoid the loss of the right to do business in Texas. *Id.*

In *Crow v. City of Corpus Christi,* 146 Tex. 558, 562, 209 S.W.2d 922, 925 (1948), the Texas Supreme Court found the taxpayer was entitled to a refund under an invalid statute. The taxpayers, in that case, and those cited in the opinion, were subject to various penalties for nonpayment including forfeiture. 209 S.W.2d at 923–24. In such a case, the failure to protest did not make the payment voluntary.

Chapter 33 contains the penalty provisions of the Tex.Code. A delinquent taxpayer is subject to penalties, penalties for collection costs, seizure of personal property, foreclosure of the tax lien, and court costs and expenses.

■ The potential penalties under the Tax Code do not include a loss of the right to do business in the State. *See Texas Nat'l Bank of Baytown v. Harris County,* 765 S.W.2d 823, 825 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Here, the Bank presented evidence that a tax lien would "jeopardize the Bank's standing with the governmental authorities which regulate the Bank." We note, however, that the Bank could avoid the penalties by protesting the tax under the Tax Code. The Tax Code requires that a protesting taxpayer pay the greater of the undisputed amount of taxes owed or the tax paid in the previous year. TEX. TAX CODE ANN. § 42.08(b) (Vernon Supp.1991).

We overrule the Bank's first and fourth points of error in its original brief and sustain the County's first and second points of error on its motion for second rehearing.

### OPINION ON MOTION FOR REHEARING

EVANS, Chief Justice, dissenting.

I disagree with the holding of the majority opinion on rehearing, affirming the trial court's summary judgment. There are two principal reasons for my disagreement.

First, I disagree with the majority's conclusion that section 42.09(a)(2) of the Texas Tax Code prohibits a taxpayer from filing suit for a refund under section 31.11 of the Tax Code, unless the party has first protested the tax under section 41.41 of the Tax Code. TEX. TAX CODE ANN. sec. 42.09(a)(2) (Vernon Supp.1991). As the majority recognizes, the Tax Code expressly authorizes a taxpayer to seek a refund of an erroneous payment of taxes by making application to the tax collector within three years from the date of judgment. TEX. TAX CODE ANN. § 31.11 (Vernon Supp. 1991). Here, it is undisputed that the Bank

made timely application to the county tax collector, asserting a right to a refund for taxes erroneously paid and explaining that the United States Supreme Court had held the tax to be illegal and void. Because the Bank made timely application for a refund, it was entitled to assert its claim for a refund in the instant suit.

The majority also concluded that the Bank was precluded from seeking judicial relief because the Bank did not file a separate protest with the appraisal board as authorized by section 41.41. TEX. TAX CODE ANN. § 41.41 (Vernon Supp.1991). The majority reasoned that because the Bank did not pursue its administrative remedy under section 41.41, it was not entitled to sue for a refund under section 42.09.

I disagree with the majority's analysis of the statute. Section 42.09(a) does provide that the "procedures" prescribed by "this title" will be the exclusive means for obtaining relief. But the term, "this title," obviously refers to Title I of the Tax Code. Title I contains chapter 31, which includes section 31.11 relating to refunds of overpayments or erroneous payments, and chapter 41, which includes section 41.41 relating to a taxpayer's right of protest. Also within Title I is chapter 42, which includes section 42.09. This section relates to the adjudication of a taxpayer's grounds of protest in (1) defending against a suit to enforce collection of delinquent taxes, or (2) asserting a claim for relief in a suit to prevent tax collection or to obtain a refund of taxes paid.

Thus, while section 42.09 states that the procedures described by "this title" are exclusive, the statute clearly reflects the legislature's intent to include "the procedures" prescribed by section 31.11, as well as those set forth in section 41.41. Since both sections are part of the same legislative enactment, both must be read together and given their intended effect. See Shaddix v. Kendrick, 430 S.W.2d 461, 463 (Tex. 1968); J.I. Case Threshing Mach. Co. v. Howth, 116 Tex. 434, 439, 293 S.W. 800, 801 (1927). I would hold that the Bank, after having unsuccessfully sought a refund under section 31.11, was entitled to seek judicial relief in the district court.

Second, I disagree with the majority opinion in its analysis of the Bank's burden of proof as nonmovant in the summary judgment proceeding. The County's motion for summary judgment asserted that the Bank could not recover on its claim, even assuming that the assessments were illegal, because the taxes were voluntarily paid and the plaintiffs had not alleged an erroneous payment within the meaning of section 31.11. Thus, the County's motion for summary judgment was based entirely on the premise that the Bank could not, as a matter of law, recover on the claim asserted in its petition.

When a defendant's motion for summary judgment is directed solely at the plaintiff's petition, and it simply challenges the sufficiency of the petition to allege an enforceable claim, the court must accept as true every allegation of the pleading against which the motion is directed. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex.1972); Gottlieb v. Hofheinz, 523 S.W.2d 7, 10 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). If the petition, when liberally construed, is sufficient in law to show a fact issue, the court must overrule the motion for summary judgment. Gottlieb, 523 S.W.2d at 10. Moreover, if the plaintiff's petition does allege a legal cause of action, a defendant who seeks a take-nothing summary judgment must conclusively disprove one or more of the essential elements of the plaintiff's claim. Swilley, 488 S.W.2d at 67; Nix v. Davis, 358 S.W.2d 225, 227 (Tex.Civ.App.—Houston [1st Dist.] 1962, no writ).

In its petition, the Bank alleged that the taxes were illegal, void, and unconstitutional, and had been so declared by the United States Supreme Court. The Bank denied that it had voluntarily paid the taxes, and it asserted instead that the taxes were paid as a result of the County's fraud and duress and because of a mutual mistake. The Bank asserted a right to refund of such erroneously paid taxes under section 31.11, and it sought judgment against the County for all payments made in discharge of the

illegal tax, plus interest, attorney's fees, and costs.

In my opinion, the Bank's petition alleged a legal right, an injury to such right, and damages sustained as a consequence of such injury. *See* 2 R. McDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 6.12 (rev. 1982). The Bank's allegations of a right to a refund of the tax payments constitute a sufficient basis for the judicial determination of the Bank's pecuniary loss. Thus, I would hold that the Bank's allegations reflect claims for affirmative relief, and do not, as the majority concludes, allege affirmative defenses. *See* 2 R. McDONALD TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 6.17.1 (rev. 1982).

I would hold that the Bank's petition reflects a genuine issue of material fact with respect to the voluntariness of its payments, as well as the related issue of fraud, duress, and mutual mistake. Because the County did not conclusively negate the Bank's allegations, the Bank's assertions must be taken as true, and the County was not entitled to a take-nothing summary judgment.

I would overrule the County's motion for rehearing, and reverse the trial court's summary judgment.