**HOUSTON INDEPENDENT SCHOOL DISTRICT, City of Houston, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, and Houston Community College System, Appellants,**

v.

**Ned B. MORRIS III, Daniel W. Shipper, Patrick A. Shipper, Anita Gibson, Mary Ann Mosely, Deborah L. Moore, Linda Shipper Bender, Caroline D. Armstrong, Pamela K. Moore, Joyce Salter, and James R. Hunt, Appellees.**

No. 01–10–00043–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2011.

Rehearing Overruled July 13, 2011.

Anthony W. Nims, Victoria Duncan Vonder Haar, Linebarger Goggan Blair & Sampson, L.L.P., Houston, TX, F. Duane Force, Linebarger Goggan Blair & Sampson, LLP, Austin, TX, for Appellants.

Ned B. Morris III, Friday Harbor, WA, Stephen G. Hunt, Bond, Hunt, French & Company, PLLC, Houston, TX, Thomas A. Ryan, Attorney at Law, Irving, TX, for Appellees.

Panel consists of Justices JENNINGS, ALCALA, and MASSENGALE.

## OPINION

ELSA ALCALA, Justice.

Appellees, Ned B. Morris III, Daniel W. Shipper, Patrick A. Shipper, Anita Gibson, Mary Ann Mosely, Deborah L. Moore, Linda Shipper Bender, Caroline D. Armstrong, Pamela K. Moore, Joyce Salter, and James R. Hunt (collectively, "the Taxpayers"), have filed a motion for rehearing and a motion for en banc reconsideration of our opinion issued on March 4, 2011. Appellants, Houston Independent School District, City of Houston, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, Harris County Hospital District, and Houston Community College System (collectively, "the Taxing Units"), have filed a response. We deny the motion for rehearing, withdraw our opinion and judgment of March 4, 2011, and issue this opinion and judgment in their place. Because we issue a new opinion, the Taxpayers' motion for en banc reconsideration of our prior opinion is moot. *See Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

The Taxing Units bring this interlocutory appeal of the trial court's order denying their plea to the jurisdiction.[1] The trial court determined it had jurisdiction over the Taxpayers' claims for refund of taxes. In their sole issue on appeal, the Taxing Units assert that the trial court erred because the Taxpayers did not exhaust their administrative remedies prior to filing their claims in district court. We conclude the Taxpayers were required to exhaust their administrative remedies and, therefore, the trial court lacked jurisdiction. We reverse and render an order of dismissal.

## Background

The Harris County Appraisal District's appraisal roll listed the Taxpayers as the owners of certain tracts of land, including 9.38 acres actually owned by the Taxpayers and .96 acres not owned by the Taxpayers. The Taxpayers did not timely challenge this determination administratively. In December 2004, the Taxing Units filed suit against the Taxpayers to collect taxes unpaid on all 10.34 acres for the years 1983 through 2003. The Taxing Units placed a lien on the properties to secure the payment of taxes, penalties, interest, and costs. The Taxpayers answered with a general denial and affirmative defenses, including that the petition

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (West 2008) (authorizing interlocutory appeal of order denying governmental entity's plea to the jurisdiction).

failed to comply with the requirements in the Tax Code, that the Taxing Units never properly notified the Taxpayers of the delinquent taxes, that the assessment of taxes is erroneous based on the description of the property, and that designated parties to the lawsuit have no ownership interest in the properties.

While the suit was pending, the Taxpayers, under protest, paid the taxes to stop further penalties and interest from accruing, to avoid foreclosure of the 9.38 acres that they did own, and to avoid breaching a contract to sell the 9.38 acres. The Taxpayers explained that they paid under protest the entire amount because the Taxing Units would not accept payment of the taxes apportioned between the 9.38 acres that the Taxpayers did own and the .96 acres that the Taxpayers did not own. Shortly after paying the taxes, the Taxpayers filed a counterclaim for a refund of the taxes, penalties, and interest they had paid on the .96 acres.[2] After receiving payment, the Taxing Units nonsuited their claims for delinquent taxes. At the Taxpayers' motion, the district court realigned the parties, designating them as the plaintiffs.

In their eighth amended petition, the Taxpayers contended they have never owned any interest in the .96 acres for which they paid taxes under duress and they sought a refund of that amount through a declaratory judgment. The Taxing Units answered by asserting affirmative defenses of governmental immunity, failure to exhaust administrative remedies, voluntary payment, and other allegations. The Taxing Units filed a plea to the jurisdiction asserting the district court lacked jurisdiction because the Taxpayers failed to exhaust their administrative remedies as required by the Tax Code. The court denied the plea.

## Standard of Review

When, as here, the facts are undisputed and the plea to the jurisdiction presents purely a legal question, we review de novo a trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). A trial court's judgment is binding only if it has jurisdiction over the parties or property, jurisdiction of the subject matter of the suit, jurisdiction to enter the particular judgment, and the capacity to act as a court. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex.1995). Subject matter jurisdiction involves the kinds of controversies a court has the authority to resolve. *Davis v. Zoning Bd. of Adjustment of City of La Porte*, 865 S.W.2d 941, 942 (Tex.1993).[3] Subject matter jurisdic-

---

**2.** The Taxpayers protested to the Harris County Appraisal District (HCAD) the determination that they were the owners of the .96 acre, and HCAD denied the protest. The Taxpayers claim they timely filed suit against HCAD. Granting a plea to the jurisdiction, the district court dismissed the case against HCAD, and that order has not been appealed. The Taxpayers also included claims for equitable subrogation against the parties who they believed were the true owners of the land who should have paid the taxes. This appeal does not concern the claims for equitable subrogation.

**3.** We note that the plea to the jurisdiction claimed by the Taxing Units here is based on the exhaustion of administrative procedures in the Tax Code and not based on sovereign immunity as a bar to the suit. Although the Taxpayers cite many cases discussing sovereign immunity, those decisions are inapplicable based on this plea premised on exhaustion of administrative procedures. *See, e.g., Saturn Capital Corp. v. City of Houston*, 246 S.W.3d 242, 245 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (sovereign immunity does not prevent one who paid illegal taxes under duress from filing suit seeking repayment). Furthermore, the issue here is not the

tion cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993).

Statutory construction is also a legal question that we review de novo. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). In construing a statute, we must "ascertain and give effect to the Legislature's intent." *Id.* To ascertain that intent, we begin with the "plain and common meaning of the statute's words." *Id.* (quoting *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004)). We also consider the objective the Legislature sought to achieve through the statute as well as the consequences of a particular construction. *Id.; see also* Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005). We "must not interpret [a] statute in a manner that renders any part of [it] meaningless or superfluous." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex.2008). We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex.2010).

### Texas Tax Code

The Texas Constitution expressly allows the Legislature to bestow exclusive original jurisdiction on administrative bodies. *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex.2006) (citing Tex. Const. art. V, § 8). Pursuant to this power, the Texas Tax Code limits the general jurisdiction of the district courts and provides "detailed administrative procedures for those who would contest their property taxes." *Id.* (citing Tex. Tax Code Ann. §§ 41.01–.71 (West 2008 & Supp.2010)).

The Texas Supreme Court has held that "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Id.* (quoting *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex.2005)). "The administrative procedures are 'exclusive' and most defenses are barred if not raised therein." *Id.* (citing *Tex. Tax Code Ann.* § 42.09 (West 2008)).

Section 42.09 of the Tax Code states:

REMEDIES EXCLUSIVE.

(a) Except as provided in Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds:

(1) in defense to a suit to enforce collection of delinquent taxes; or

(2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

(b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

(1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or

(2) if the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose

Taxing Unit's decision on the merits. The Taxpayer's citation to *Bashara v. Saratoga Indep. Sch. Dist.*, 139 Tex. 532, 163 S.W.2d 631, 633 (1942), is inapplicable because *Bashara* concerns the merits of the underlying dispute.

the lien on January 1 of the year for which the tax was imposed.

(c) For purposes of this section, "suit" includes a counterclaim, cross-claim, or other claim filed in the course of a lawsuit.

Tex. Tax Code Ann. § 42.09.

To complain about ownership or any other matter adversely affecting the property or the taxpayer, the property owner is required to timely file a written protest with the appraisal review board within the applicable period of limitations. *Id.* § 41.44(a) (West 2008). Generally, a property owner must file a written notice of protest within 30 days after delivery of notice. *Id.* After exhaustion of the administrative right to protest, a property owner may file a petition for de novo review with the district court. *Id.* §§ 42.21(a) (West Supp.2010), 42.23(a) (West 2008). Administrative decisions are final if not appealed to the district court within 60 days. *Id.* § 42.21(a); *Cameron Appraisal Dist.*, 194 S.W.3d at 502.

### Taxpayers Are "Property Owners" Entitled to Administrative Challenge

■ The parties dispute whether section 42.09(a) applies to the Taxpayers because it uses the term "property owners." *See* Tex. Tax Code Ann. § 42.09(a). The Taxpayers point out that the administrative tax protest procedure is only available to a "property owner," and they contend that the exhaustion requirement is inapplicable to one whom, in fact, does not own the property in question. *See id.* §§ 41.41(a), 42.09(a)(1)-(2) (West 2008).

Section 41.41(a)(7) states, "A property owner is entitled to protest before the appraisal review board the ... determination that the property owner is the owner of property...." *Id.* § 41.41(a)(7). The literal meaning of "property owner" is the actual property owner. Applying this literal meaning, section 41.41(a)(7) would provide, "A[n] [actual] property owner is entitled to protest before the appraisal review board the ... determination that the [actual] property owner is the owner of property." Thus, read literally, section 41.41(a)(7) authorizes a protest of a determination of ownership only if that determination is correct and the party challenging the tax is the party who is legally obligated to pay it. The legislature could not have intended to create a right of administrative protest that can only be invoked in situations where the determination being protested is correct. *Cf.* Black's Law Dictionary, 1344 (9th ed. 2009) (defining "protest" in tax context as "A taxpayer's statement to the collecting officer that payment is being made unwillingly because the taxpayer believes the tax to be *invalid.*") (emphasis added). The plain meaning of "protest" in the tax context indicates that the Legislature intended to create a right to challenge incorrect determinations. *See id.*

The Taxpayers contend that the section 41.41(a)(7)'s "most reasonable meaning is that one who actually owns the property can object if a tax notice is sent elsewhere." The Taxpayers thus interpret the term "property owner" as having two different meanings within section 41.41(a)(7). Under their interpretation, section 41.41(a)(7) would provide, "A[n] [actual] property owner is entitled to protest before the appraisal review board the ... determination that the [person listed as the] property owner [in the tax appraisal rolls] is the owner of property...." In the scenario the Taxpayers describe, the actual property owner would not be the assessed the tax; instead, the person erroneously determined to be the property owner would. However, by definition, a tax protest is made by the party against whom

the tax is assessed—i.e., the taxpayer. *See id.* By restricting the term "property owner" to only the actual property owner, the Taxpayers' interpretation of section 41.41(a)(7) contradicts the definition of tax protest, as that term is used in section 41.41(a). *See id.*

In contrast to the Taxpayers' interpretation, we interpret the term "property owner" with respect to section 41.41(a)(7) as having a consistent meaning—a person listed as the property owner in the tax appraisal rolls. Under our interpretation, section 41.41(a)(7) provides: "A [person listed as the] property owner [in the tax appraisal rolls] is entitled to protest before the appraisal review board the ... determination that the [person listed as the] property owner [in the tax appraisal rolls] is the owner of property...." Our interpretation is consistent with the definition of a tax protest because it provides that the person against whom the tax is assessed—not the untaxed actual property owner—has the administrative right to challenge the tax erroneously assessed against him.

Our interpretation is confirmed by the case law from the Texas Supreme Court and this Court as well as the broader statutory scheme. As explained above, section 42.09(a) provides that if an administrative remedy is available to a person, he must exhaust that administrative remedy before he may take that claim to the courts; failure to exhaust results in forfeiture of the right to assert the claim. *See* TEX. TAX CODE ANN. § 42.09(a). In *Robstown Independent School District v. Anderson,* the Texas Supreme Court held that a person who was listed in the tax rolls as the "property owner" "waived the defense [of nonownership] ... by failing to comply with the administrative procedure of protest." 706 S.W.2d 952, 953 (Tex. 1986). The interpretation of section

41.41(a)(7) implicit in the Texas Supreme Court's holding is the same interpretation that we apply in the present case. Likewise, in *First Bank of Deer Park v. Harris County,* this Court held that a banking corporation that was assessed property taxes on shares of its own stock could have administratively protested its nonownership of that stock by filing protest with appraisal review board. 804 S.W.2d 588, 591 (Tex.App.-Houston [1st Dist.] 1991, no writ).

Following *Robstown,* in 1987, the Legislature added section 42.09(b) to provide an exception to the exhaustion requirement: "A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense ... if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed...." Act of April 23, 1987, 70th Leg., R. S., ch. 53, § 1, sec. 42.09(b), 1987 Tex. Gen. Laws 130. (codified at TEX. TAX CODE ANN. § 42.09(b)). The Taxpayer's proposed interpretation of 41.41(a)(7) would render meaningless the exception to the exhaustion requirement. If only "actual property owners" can challenge determinations of ownership, then, as the Taxpayers assert, exhaustion would never apply to a nonowner, and a nonowner would be in no need of an exception to the exhaustion requirement. However, the Legislature's exception to exhaustion, allowing persons to plead nonownership as an affirmative defense, specifically contemplates that exhaustion will apply to a nonowner. Otherwise, the exception would only guarantee the right to plead nonownership as an affirmative defense to an actual property owner. We must reject the Taxpayers' interpretation of section 41.41(a)(7) because it would render the exception in section 42.02(b) meaningless. *See Hogue,* 271 S.W.3d at 256.

Applying our interpretation, the Taxpayers were entitled to protest the appraisal review board's determination that they were the owners of the property. Because the Taxpayers failed to timely exercise their administrative challenge under section 42.09(a), the district court did not obtain jurisdiction over their case by an appeal under that portion of the statute. *See* TEX. TAX CODE ANN. §§ 41.41, 42.21, 42.09; *Cameron Appraisal Dist.*, 194 S.W.3d at 502.

The Taxpayers cite to several cases purportedly showing that they lacked standing to pursue an administrative tax protest and, therefore, could not have exhausted administrative remedies. The Taxpayers refer to *KM–Timbercreek, LLC v. Harris Cnty. Appraisal Dist.*, 312 S.W.3d 722 (Tex.App.-Houston [1st Dist.] 2009, no pet.), *Koll Bren Fund VI v. Harris Cnty. Appraisal Dist.*, No. 01–07–00321–CV, 2008 WL 525799 (Tex.App.-Houston [1st Dist.] Feb. 28, 2008, pet. denied) (mem. op.), and *Simmons & Co. Holdings, Inc. v. Houston Indep. Sch. Dist.*, No. 01–97–00691–CV, 1999 WL 442141 (Tex.App.-Houston [1st Dist.] June 29, 1999, no pet.) (not designated for publication).[4] *KM–Timbercreek* and *Koll Bren* are distinguishable from this case because neither addresses the non-ownership ground of protest involved in this case. *See KM–Timbercreek*, 312 S.W.3d at 726; *Koll Bren*, 2008 WL 525799, at *1. Instead, these cases address the situation where one entity sells property to a second entity and subsequently the first entity adminis-

tratively protests the taxes instead of the second entity. *See KM–Timbercreek*, 312 S.W.3d at 725; *Koll Bren*, 2008 WL 525799, at *1. This Court held the first entity lacked standing to protest the taxes because it had sold the property to the second entity, which was the only entity with standing. *See KM–Timbercreek*, 312 S.W.3d at 727; *Koll Bren*, 2008 WL 525799, at *4. In contrast, here, the Taxpayers, being listed as the owner in the tax appraisal rolls, had standing to administratively protest their claim of non-ownership as to the assessment of all the properties against them.

In *Simmons*, the taxing entities sued Simmons for delinquent taxes. *Simmons*, 1999 WL 442141, at *1. Simmons had assumed a lease providing that it would pay all property taxes. *Id.* Simmons subleased part of the property, requiring the sublessee to pay its portion of the property taxes. *Id.* The sublessee failed to pay, and the taxing entities sued Simmons for the amount. *Id.* Simmons defended itself at trial by claiming it was entitled to an exemption, but the district court determined Simmons was responsible for the taxes because it had not exhausted all available administrative remedies. *Id.* Examining a dictionary's definition for "owner," this Court determined that a lessee could not be a "'property owner' for purposes of the relevant provisions of the Tax Code...." *Id.* at *2. The primary question in *Simmons* was whether a nonowner can administratively protest the applicability of

4. The taxpayers also cite three cases not from this Court: *Skylane West Ltd. v. Harris Cnty. Appraisal Dist.*, No. 14–08–00507–CV, 2009 WL 4913256 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (mem. op.), *Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd.*, 180 S.W.3d 267, 270 (Tex.App.-Dallas 2005, no pet.), and *Hood v. Hays Cnty.*, 836 S.W.2d 327, 329 (Tex.App.-Austin 1992, no pet.). However, these cases are distinguishable because they do not address the non-ownership ground of protest. *See Skylane*, 2009 WL 4913256, at *1 (protest of valuation of property); *1420 Viceroy*, 180 S.W.3d at 270 (holding that because ground of protest relied upon by taxpayer, lack of notice from a taxing unit, was not contained in chapter 41 of Tax Code, section 42.09 did not bar suit based on non-exhaustion of remedies); *Hood*, 836 S.W.2d at 329 (protest of valuation of property).

a tax exemption under section 41.41(a)(4), not, as in the present case, whether a nonowner could protest the determination that he was the owner of the property under section 41.41(a)(7). As explained above, the term "property owner" as it applies to section 41.41(a)(7) means the person listed as the property owner in the tax appraisal rolls.

We conclude that because the Taxpayers failed to timely exercise their administrative challenge under section 42.09(a), the district court never acquired jurisdiction over their claim for a refund unless the exception in section 42.09(b) applies. *See* TEX. TAX CODE ANN. §§ 41.41, 42.21, 42.09; *Cameron Appraisal Dist.*, 194 S.W.3d at 502.

**Affirmative Defense of Non–Ownership**

■ The parties dispute whether the exception in section 42.09(b) is applicable. *See* TEX. TAX CODE ANN. § 42.09(b). In a suit by a taxing authority "to enforce personal liability for the tax," a person who has not exhausted his administrative remedies may nevertheless respond by asserting an "affirmative defense" that he "did not own the property on which the tax was imposed." *Id.* This exception applies only when the person against whom a suit to collect a delinquent property tax is filed is asserting an "affirmative defense." *Id.* Although the Taxpayers initially asserted an affirmative defense of non-ownership, the present lawsuit is no longer one in which the Taxpayers are asserting an affirmative defense. Rather, because the Taxing Units have nonsuited their claims against the Taxpayers, the Taxpayers' present lawsuit is a claim for affirmative relief with them as plaintiffs. The Taxpayers do not assert an affirmative defense as required by the Tax Code. *See id.*

The Taxpayers accurately observe that despite their failure to exhaust administrative remedies, when the Taxing Units filed the lawsuit against them, they properly raised non-ownership as an affirmative defense. *See id.* § 42.09(b)(1); *Cameron Appraisal Dist.*, 194 S.W.3d at 502 & n. 2 (stating that although other defenses are barred by failure to exhaust administrative remedies, taxpayers "who do not file administrative protests may still assert that . . . they did not own the property"). Had the Taxing Units not nonsuited their claims against the Taxpayers, the trial court would have jurisdiction with the Taxpayers in the posture of defendants asserting an affirmative defense. *See* TEX. TAX CODE ANN. § 42.09(b)(1); *Cameron Appraisal Dist.*, 194 S.W.3d at 502. But when the Taxing Units dropped the lawsuit, there was no longer any case for the Taxpayers to defend against. We disagree with the Taxpayers that their "affirmative defense" against the Taxing Units can continue after the Taxing Units nonsuited their claims because the exception allows only an "affirmative defense" to a lawsuit filed by the Taxing Units. *See* TEX. TAX CODE ANN. § 42.09(b).

■ An affirmative defense is different from a claim for affirmative relief. *See Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 268 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). "An affirmative defense 'seeks to establish an independent reason that the plaintiff should not recover' and is 'thus [a defense] of avoidance, rather than a defense in denial'; that is, it is a defense of confession and avoidance." *Id.* (quoting *In re C.M.*, 996 S.W.2d 269, 270 (Tex.App.-Houston [1st Dist.] 1999, no pet.)). In contrast, "[a] claim for affirmative relief is one 'on which the claimant could recover compensation or relief even if the plaintiff abandons his cause of action.'" *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 38 (Tex.2008) (quoting *Univ. of Tex. Med. Branch at*

*Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 101 (Tex.2006) (punctuation omitted)). When the Taxing Units nonsuited their claims for delinquent taxes, the Taxpayers' affirmative defense became moot, and the section 42.09(b) exception was no longer applicable according to the express terms of the Tax Code. *See* TEX. TAX CODE ANN. § 42.09(b).

We recognize that the basis for an affirmative defense that is proper under the Tax Code can, in some circumstances, also be the basis a claim for affirmative relief. *See First Bank of Deer Park*, 804 S.W.2d at 593 (stating that in tax refund case, defensive theory may be pleaded as either affirmative defense or as separate cause of action if party is seeking affirmative relief). Although it is possible for certain theories to form the basis of both claims for affirmative relief and affirmative defenses, section 42.09(b) is only applicable to an "affirmative defense." *See* TEX. TAX CODE ANN. § 42.09(b). Therefore, the bar in section 42.09(a) that prohibits proceedings in court when administrative remedies have not been exhausted applies. *See id.* § 42.09(a)(2).

The Taxpayers suggest that the rules of civil procedure allow them to proceed with their claim even after the Taxing Units nonsuited their claims. Texas Rule of Civil Procedure 162 provides in pertinent part, "Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief...." TEX.R. CIV. P. 162; *In re Greater Houston Orthopaedic Specialists*, 295 S.W.3d 323, 324 (Tex.2009). Although generally a lawsuit may proceed after dismissal of a claim by an adverse party, the lawsuit must independently comport with a court's jurisdiction. *See Color Tile, Inc. v. Ramsey*, 905 S.W.2d 620, 623 (Tex.App.-Houston [14th Dist.] 1995, no writ). Here, the Taxpayers' affirmative claim for a refund does not comport with the requirements of the Tax Code, which is required for the district court's jurisdiction in this case. *See* TEX. TAX CODE ANN. § 42.09(a)(2).

The Taxpayers rely upon *City of Pharr v. Boarder to Boarder Trucking Serv., Inc.* to assert that the trial court was "authorized to dispose of the issues involved in [the non-ownership] defense." 76 S.W.3d 803, 806 (Tex.App.-Corpus Christi 2002, pet. denied). In *City of Pharr*, the court stated, "Furthermore, because the appellee is able to use non-ownership as a defense, we hold that [the] trial court is authorized to dispose of the issues involved in that defense." *Id. City of Pharr* is consistent with our decision today in that it concerns issues related to a defense asserted by non-owners. *See* TEX. TAX CODE ANN. § 42.09(b). Here, the concern is not that there are issues related to a defense of non-ownership but, rather, that there is no defense being asserted because the Taxpayers are plaintiffs with a claim for affirmative relief. We hold that the district court lacks jurisdiction because no party is asserting an affirmative defense of non-ownership as required for jurisdiction under section 42.09(b). *See id.*

### Exclusivity of Tax Code

Generally, the administrative tax protest procedure is a property owner's exclusive opportunity for raising a ground challenging the validity of a tax. *See id.* § 42.09(a). However, when "[t]he basis of [a plaintiff's] complaint in the trial court ... is not a ground of protest contained in the property tax code[,] ... section 42.09's exclusivity provision is not applicable and does not preclude the trial court from exercising subject matter jurisdiction over [plaintiff's] lawsuit." *Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd.*, 180 S.W.3d 267, 269–70 (Tex.App.-Dallas 2005,

no pet.) (holding claim that failure of tax office—as opposed to chief appraiser, appraisal district, and appraisal review board—to provide required notice is not ground of protest authorized by Tax Code); *see* TEX. TAX CODE ANN. § 42.09(a)(2); *Cameron Appraisal Dist.*, 194 S.W.3d at 502 (holding claim seeking declaration that tax is unconstitutional "need not be brought administratively" through tax protest procedure before asserting that claim in district court but claim seeking to set aside individual tax assessment, even though premised on claim of unconstitutionality, must be brought administratively through tax protest procedure).

■ As explained above, the ground for protest at issue here is provided for in section 41.41, which states that a property owner is entitled to protest before the appraisal review board the determination that the property owner is the owner of the property. *See* TEX. TAX CODE ANN. § 41.41(a).[5] The Tax Code, therefore, exclusively controls the disposition of this case. *See id.* § 42.09; *Cameron Appraisal Dist.*, 194 S.W.3d at 502. Having determined that the Taxpayers' affirmative claims for refund on the grounds of non-ownership is controlled by the Tax Code and that those claims fail to meet the requirements of the code, we hold the district court lacks jurisdiction over the Taxpayers' claims.

## Implied Duress

■ The Taxpayers assert that the district court had jurisdiction over their lawsuit because they paid the taxes under implied duress. Statutory penalties and accrued interest for late payment can constitute implied duress. *Highland Church of Christ v. Powell,* 640 S.W.2d 235, 236–37 (Tex.1982). Under the common law, a person could sue for a refund of taxes if he was compelled under duress imposed by a public entity to pay a tax that is illegal, illegally imposed, or illegally collected. *Dallas Cnty. Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 876 (Tex.2005); *Nivens v. City of League City,* 245 S.W.3d 470, 474 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). However, there can be no claim of implied duress if a person has a procedure by which he can pay the disputed amount, avoid the penalties and interest, and assert a claim for repayment. *See First Bank of Deer Park,* 804 S.W.2d at 594–95. The Tax Code provides this type of procedure to a property owner in the form of the administrative tax protest. *See* TEX. TAX CODE ANN. §§ 41.41(a), 42.08 (West 2010) (to appeal decision after administrative tax protest, taxpayer must pay lesser of amount of taxes due on (1) portion of taxable value of property that is not in dispute or (2) property under the order from which the appeal is taken); *First Bank of Deer Park,* 804 S.W.2d at 595. Accordingly, a property owner has no claim of implied duress where he has had the opportunity to assert a tax protest

---

5. In *Robstown Independent School District v. Anderson,* the Texas Supreme Court held that a property owner who, "[p]ursuant to section 41.41 ... is entitled to protest ... a determination that he is the owner of property" but "fails to comply with the administrative procedure of protest ... is precluded from raising non-ownership in defense to a suit to enforce collection of delinquent taxes." 706 S.W.2d 952, 953 (1986) (citing TEX. TAX CODE ANN § 42.09 (West 1982)). The Legislature amended section 42.09 to specifically overturn the *Robstown* holding. *Gen. Elec. Capital Corp. v. City of Corpus Christi,* 850 S.W.2d 596, 602 (Tex.App.-Corpus Christi 1993, writ denied). In doing so, the Legislature provided that a person, regardless of exhaustion of the administrative protest procedure, may assert a claim of non-ownership as an affirmative defense against a suit to enforce personal liability for a tax. TEX. TAX CODE ANN. § 42.09(b)(1) (West 2008).

regardless of whether a protest was actually asserted. *See First Bank of Deer Park*, 804 S.W.2d at 594–95.

The Taxpayers contend that *First Bank of Deer Park* stands for the proposition that duress would make exhaustion of administrative remedies unnecessary. *See id.* at 595. First Bank of Deer Park sued Harris County for a refund of taxes it paid for bank stock but it did not first administratively protest the tax assessment. *Id.* at 592. This Court determined that the Bank's failure to administratively protest the ownership of the stock precluded it from seeking judicial relief. *Id.* This Court noted that the bank's suit was for the refund of taxes it paid to Harris County and that its assertion of implied duress was as an affirmative defense to the voluntary-payment rule relied on by Harris County to defend against the Bank's case. *Id.* at 593–94. Under the "voluntary-payment rule," a party making a voluntary payment of taxes may not file a suit for a refund. *Id.* at 593. This Court held that the bank had failed to present any evidence of duress or any other affirmative defense to voluntary-payment rule. *Id.* at 594–95. This Court explained that although the bank presented evidence that a tax lien would jeopardize the bank's standing with governmental authorities that regulate it, it could have avoided the penalties by administratively protesting the tax. *Id.* at 595. *First Bank of Deer Park* is instructive in that it explains that duress can be an affirmative defense used by a taxpayer to defend against the voluntary-payment rule when that rule is asserted by a taxing entity, but it also clarifies that duress does not occur when the harm coming to a taxpayer could have been avoided by an administrative protest to a tax assessment. *Id.* at 594–95. We, therefore, disagree with the Taxpayers' characterization of *First Bank of Deer Park* as not requiring exhaustion of their administrative remedies.

The Taxpayers cite also *Nivens v. City of League City* and *Fort Bend Independent School District v. Schindler*, No. A14–90–00385–CV, 1991 WL 94414 (Tex. App.-Houston [14th Dist.] June 6, 1991, writ denied) (not designated for publication), to support their entitlement to a refund of taxes paid under duress. In *Nivens*, this Court determined that governmental immunity does not apply when a taxpayer seeks a refund of illegally collected taxes and alleges that the payments were made as a result of duress. *Nivens*, 245 S.W.3d at 474. Nivens sued the city to recover taxes they had paid in excess of the amount the city was legally permitted to collect under the water code, and the city responded that the action was barred by the principle of governmental immunity. *Id.* at 473. Unlike *Nivens*, where governmental immunity was the basis of the plea to the jurisdiction, here, the plea to the jurisdiction is premised on failure to exhaust administrative remedies. *Cf. id.* at 474. *Nivens*, therefore, is inapplicable.

*Schindler* is also inapplicable. Schindler sued for the refund of taxes, and on appeal, Ford Bend Independent School District relied on the voluntary-payment rule to defend against the suit. *See Schindler*, 1991 WL 94414, at *1. This Court noted that an exception to the voluntary-payment rule exists when the payment is made under duress. *Id.* at *2. *Schindler* does not mention jurisdiction at all, nor does it mention exhaustion of remedies. *Id.* at *1–3.

Two other cases cited by the Taxpayers for their claim of duress also do not support their assertion that they have a right, regardless of exhaustion of administrative procedures, to sue for a refund of taxes paid under duress. Both *Bolton*, 185 S.W.3d at 877, and *Austin National Bank*

of *Austin v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242, 246 (1934), discuss duress as a defense to the taxing authority's assertion of the voluntary-payment rule. But the voluntary-payment rule has been rendered largely unavailable due to the provisions in the Texas Tax Code, as explained by the Supreme Court of Texas:

> The voluntary-payment rule has also been applied, albeit infrequently, to prohibit recovery of illegal taxes paid to the sovereign. This Court has stated: "A person who voluntarily pays an illegal tax has no claim for its repayment" unless that person paid under duress.... Although the voluntary-payment rule has been applied, at times, in both the private and public contexts, other legal and statutory remedies have evolved over time to supplant the rule's application in many of these contexts. Like other equitable claims and defenses, an adequate legal remedy may render equitable claims of unjust enrichment and equitable defenses of voluntary-payment unavailable.... For example, the Texas Tax Code now provides that a person may recover a voluntary payment of certain illegal taxes, as long as the person paid under protest.

*BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 769–71 (Tex.2005). Similarly, the Texas Supreme Court explains:

> In many areas, the common-law requirements for voluntary payments and duress have been supplanted by statute. In the years after [*Nat'l Biscuit Co. (Nabisco) v. State*, 134 Tex.293, 135 S.W.2d 687 (Tex.1940),] and *Austin Nat'l Bank*, the Legislature systematically adopted refund mechanisms and protest requirements in various statutes that obviated the need to show business compulsion in many cases.... For example, the Legislature adopted mechanisms for the refund of a "tax or fee

imposed by [Title 2 of the Tax Code] or collected by the comptroller under any law, including a local tax collected by the comptroller.".... The Legislature also enacted a mechanism to protest the payment of ad valorem taxes in order to recover an overpayment.... These statutes apply to most of the taxes and fees expressly authorized by statute. They apply to state and local sales taxes, property taxes, corporate franchise taxes, professional occupation taxes, and much more.

*Bolton*, 185 S.W.3d at 880.

We hold that because the Taxpayers could have administratively challenged the disputed amount, they cannot claim duress based on the consequences resulting from their failure to make that challenge, nor may they pursue as plaintiffs an affirmative claim for refund of taxes paid under duress. *See First Bank of Deer Park*, 804 S.W.2d at 593.

### Due Process

 Collection of a tax constitutes a deprivation of property; therefore, a taxing unit must afford a property owner due process of law. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Florida*, 496 U.S. 18, 36–37, 110 S.Ct. 2238, 2250–51, 110 L.Ed.2d 17 (1990). Due process, at a minimum, requires notice and a fair opportunity to be heard prior to a deprivation of a protected property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 348, 96 S.Ct. 893, 902, 909, 47 L.Ed.2d 18 (1976). The due process clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. *Bank of Am. Nat'l Trust & Sav. Assoc. v. Dallas Cent. Appraisal Dist.*, 765 S.W.2d 451, 454 (Tex.App.-Dallas 1988, writ denied). Some form of hearing is required before an owner can be finally deprived of a protected

property interest. *Appraisal Review Bd. of El Paso Cnty. Cent. Appraisal Dist. v. Fisher,* 88 S.W.3d 807, 813 (Tex.App.-El Paso 2002, pet. denied) (holding that "[s]ince it is undisputed that Mr. Fisher neither received notice nor had an opportunity to contest the appraisal, he was denied due process, and any taxes and penalties assessed from the appraisal is void."); *Bank of Am.,* 765 S.W.2d at 454 (remanding case to Dallas County Appraisal Review Board for hearing on bank's protest based on finding that Bank had been deprived of due process based on application of Tax Code). As we have noted above, the Taxpayers had a right to and could have challenged their non-ownership of the property under the administrative provisions of the Tax Code. *See* TEX. TAX CODE ANN. § 41.41(a)(7).

The Taxpayers, however, suggest that they did not receive adequate notice about the assessment. They assert that "there is nothing in the record that the taxpayers were furnished with appraisal notices" prior to being sued by the Taxing Units. The Taxpayers claim the record fails to show they "were ever billed for the taxes on the properties not in dispute." They suggest that this record defect "raises issues under the federal and state constitutions," although they do not explain which issues are raised.

In the Taxpayers' original answer (when they were still the defendants), they asserted as an affirmative defense: "Notice of Delinquent Taxes: Defendant further alleges that neither the Harris County Appraisal District nor any taxing unit ever timely and properly notified the property

owners of delinquent taxes as required under § 33.04(d) of the Texas Property Tax Code." After the realignment of the parties, Taxpayers acting as plaintiffs responded to the Tax Authorizes second amended plea to the jurisdiction. The Taxpayers never complained about a lack of notice. Moreover, an attached affidavit from one of the Taxpayers, James R. Hunt, explains that they met with an official from the Harris County Appraisal District (HCAD) to discuss their non-ownership. The Taxing Units suit to collect taxes was filed about one year later in December 2004. The taxes were paid in October 2005.

In general, a tax protest must be filed within 30 days of delivery of notice. *See id.* § 41.44(a). In 1985, the Legislature added failure to give notice as a ground for a tax protest in the Tax Code. *See id.* § 41.411(c) (West 2008).[6] Although the record does not show when notice of taxes due was first delivered to the Taxpayers, it is clear that by late 2003 the Taxpayers were discussing the matter with HCAD and had actual notice about the assessment. The Taxpayers' failure to bring an administrative tax protest to challenge failure to give notice bars their ability to assert this ground in district court.[7] *See id.* §§ 41.411(c), 41.44(c), 42.09(a). We disagree with the implication by the Taxpayers that they have been deprived of due process due to lack of notice because the record shows they received actual notice at least one year before trial and they failed to administratively protest the failure to give notice through the administrative pro-

6. Starting on Dec. 31, 2007, if the ground of the tax protest is failure to give notice, the tax protest must be filed prior to the date taxes would become delinquent, which in that situation would be 125 days after written notice of taxes due is first delivered. *See* TEX. TAX CODE ANN. § 41.411(c) (West 2008).

7. No notice was timely filed by the Taxpayers within 30, or even 125, days of their first notice.

cedures in the Tax Code. *See City of Houston v. Parkinson,* 419 S.W.2d 900, 904 (Tex.Civ.App.-Houston 1967, writ ref'd n.r.e.) (due process is satisfied if complaining party had actual notice).

### Conclusion

We hold the trial court erred by denying the Taxing Units' plea to the jurisdiction. *See* TEX. TAX CODE ANN. § 42.09(a)(2); *Cameron Appraisal Dist.,* 194 S.W.3d at 502; *see also First Bank of Deer Park,* 804 S.W.2d at 592 (stating that taxpayer did not preserve right to challenge ownership of stock because protest of ownership under Tax Code section 41.41 was not timely filed). We sustain the Taxing Units' sole issue. We reverse the order of the trial court and render judgment granting the plea to the jurisdiction.